Jerry Carlo MORENO,
Petitioner-Appellant,

v.

W.J. ESTELLE, Jr., Director, Texas Department of Corrections, and Jim Mattox, Attorney General of the State of Texas, Respondents-Appellees.

No. 82–1417.

United States Court of Appeals,
Fifth Circuit.

Oct. 14, 1983.

Mary L. Sinderson, Houston, Tex., for petitioner-appellant.

Charles A. Palmer, Asst. Atty. Gen., Austin, Tex., for respondents-appellees.

Before GEE, GARZA and TATE, Circuit Judges.

TATE, Circuit Judge:

The petitioner Moreno, an inmate of the Texas Department of Corrections, appeals to this court from the denial of his application for federal habeas corpus relief under 28 U.S.C. § 2254. Moreno was convicted in state court of aggravated assault after trial

by jury, and sentenced to life imprisonment pursuant to the enhancement provisions of the Texas habitual offender statute, Texas Penal Code § 12.42. On the appeal, as he did in the district court, Moreno raises three contentions in support of his application for relief: (1) that his conviction violated the Sixth and Fourteenth Amendments since he was denied both the right to present his own defense and the effective assistance of counsel, (2) that the trial court refused to allow him to question the jury on range of punishment, and thus denied him the right to meaningfully exercise his peremptory challenges in the jury selection process, and (3) that his sentence of life imprisonment is so disproportionate to the offense committed in that it contravenes the Eighth Amendment's prohibition against cruel and unusual punishment. After an evidentiary hearing on these matters, the district court denied relief. We affirm.

On June 5, 1974, the defendant and two women colleagues attempted to shoplift meat products valued at approximately $23.00 from a grocery store in Dallas. When the two women were detained by the store personnel, Moreno intervened with a pistol and engineered their escape. The defendant was charged with aggravated assault and was convicted after a trial by jury. At the punishment phase of the trial, the state introduced evidence of Moreno's two prior felony convictions in accordance with the enhancement provisions of § 12.42 of the Texas Penal Code. The jury rendered a verdict of "true" as to each of these prior convictions, and the court sentenced Moreno to life imprisonment as required by the enhancement statute. Texas Penal Code § 12.42(d). The defendant appealed. In *Moreno v. State,* 541 S.W.2d 170 (Tex.Cr. App.1976), the Texas Court of Criminal Appeals affirmed the conviction.

The defendant then filed a petition for federal habeas relief pursuant to 28 U.S.C. § 2254. An evidentiary hearing was held before a United States Magistrate, who recommended that all requested relief be denied. The district judge ordered that a supplemental hearing be held before the Magistrate, after which he adopted the Magistrate's findings and denied Moreno's petition. It is Moreno's appeal from this judgment that is presently before this court.

I. *Sixth Amendment Claims*

■ The defendant raises two interrelated, yet distinct, contentions in support of his claim that he was denied his Sixth Amendment guarantee of effective assistance of counsel. First, Moreno argues that he was denied his constitutional right to present his own defense as recognized in *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Second, the defendant asserts that, apart from this issue of conducting his own defense, his trial attorney was ineffective since she failed to pursue certain trial strategies suggested by the defendant. We find no reversible merit in either of these contentions.[1]

A. *The Defendant's Right to Present His Own Defense*

Moreno contends that the trial court denied him the right to present his own defense by requiring him to proceed with retained counsel on the morning of trial, even though he clearly stated to the judge that he was dissatisfied with her representation. In particular, the defendant refers to a discussion with his attorney and the judge that took place just prior to the selection of the jury. During this discussion, the defendant informed the trial judge that he wanted his attorney to withdraw from the

---

1. We address these Sixth Amendment issues separately since, though factually interrelated, they are subject to different standards of review. The claim that the defendant was denied the right to present his own defense, if established, would require us to reverse without inquiry into the question of harmless error, for "the right to represent oneself is not 'result oriented.'" *Chapman v. United States,* 553

F.2d 886, 891 (5th Cir.1977). By comparison, the claim that defense counsel was ineffective since she failed to adopt certain strategies suggested by the defendant, if established, would require us to address the further issue of whether some "actual, adverse impact on the fairness of the trial" resulted from her omission. *Boyd v. Estelle,* 661 F.2d 388, 389–90 (5th Cir.1981).

case since she was not "helping" him and would not do things that he requested her to do.[2] At no point in the discussion, however, did the defendant expressly inform the trial judge that he wished to represent himself without the assistance of counsel.

Moreno argues that the trial court's decision to proceed with the trial after this exchange deprived him of the right "to personally manage and conduct his own defense" under the teaching of *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Moreno correctly notes that *Faretta* mandates that a state may not force a lawyer upon an unwilling defendant. *Faretta, supra,* 422 U.S. at 814–15, 95 S.Ct. at 2531. Hence, *Faretta* guarantees that a criminal defendant may reject the services of counsel and act as his own attorney if he so wishes. While proceeding without the assistance of counsel may be unwise, the *Faretta* rule is based on the premise that "the right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails." *Faretta, supra,* 422 U.S. at 819–20, 95 S.Ct. at 2533.

■ But while *Faretta* grants the defendant the right to conduct his own defense, it cautions that such a decision necessarily requires the accused to relinquish "many of the traditional benefits associated with the right to counsel." *Faretta, supra,* 422 U.S. at 835, 95 S.Ct. at 2541. Thus, the defendant's decision to proceed pro se must be clearly and unequivocally expressed after a knowing and intelligent waiver of the right to proceed with the assistance of counsel. *Id.* Sitting en banc, we stated,

> The right of self-representation entails a waiver of the right to counsel, since a defendant obviously cannot enjoy both rights at trial. Because of the important and well-recognized benefits associated with the right to counsel, *see, e.g., Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), it is preeminent in the sense the right attaches unless affirmatively waived. The mere failure to request counsel will not be deemed a waiver. *See, e.g., Brewer v. Williams,* 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1976); *Carnley v. Cochran,* 369 U.S. 506, 513, 82 S.Ct. 884, 888, 8 L.Ed.2d 70 (1962).
>
> While the right to counsel is in force until *waived,* the right of self-representation does not attach until *asserted.* In order for a defendant to represent himself, he must "knowingly and intelligently" forego counsel, and the request must be "clear and unequivocal." *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541.

*Brown v. Wainwright,* 665 F.2d 607, 610 (5th Cir.1982) (en banc).

■ A review of the record reveals that Moreno did not explicitly inform the trial

---

2. The transcript of this exchange reads as follows:

THE DEFENDANT: This is my attorney and she is hired by my people and I want her to withdraw from the case. I feel she isn't helping me.

THE COURT: She isn't what?

THE DEFENDANT: She isn't helping me. I have asked her to do things for me and everything and I can't get her to do anything. My people pay her and I don't want her.

THE COURT: Miss Hemphill, how long have you been this man's lawyer?

MISS HEMPHILL: I believe since June this year, Your Honor.

THE COURT: And you were privately employed by his people?

MISS HEMPHILL: Yes, Your Honor.

THE COURT: How many times has this case been set for trial?

MISS HEMPHILL: A number of times, Your Honor. I don't know exactly how many times.

THE COURT: And the case has been specially set for trial?

MISS HEMPHILL: Yes, sir.

THE COURT: And the jury is now here?

MISS HEMPHILL: Correct.

THE COURT: And it has been here since 10:55 a.m. this morning and everybody is ready for trial. Do you have announcement of ready?

MISS HEMPHILL: Yes, Your Honor.

THE COURT: The State is ready?

MR. BURNHAM: Yes, Your Honor.

THE DEFENDANT: I'm not ready. I'm the Defendant.

THE COURT: Your request is denied. Sit down over there.

court that he wished to proceed pro se and thus waive assistance of counsel.[3] He merely informed the court that he was dissatisfied with his attorney and that he wanted her to withdraw. Moreno's stated reasons for this request were that his counsel had failed to carry out certain unspecified requests and that she was not "helping" him; not that he wished to act as his own attorney. We cannot infer from the defendant's general request to the court to dismiss his attorney that he desired to waive counsel and continue the trial pro se. Nor does the trial judge have an obligation to personally inform the defendant of his right to represent himself in such circumstances. *Brown v. Wainwright, supra,* 665 F.2d at 612.

However, Moreno's counsel on appeal ably argues that a defendant should not be required to explicitly inform the trial court of his wish to proceed pro se in circumstances where his personal defense strategy clearly diverges from that of his attorney. In particular, Moreno asserts in his claim for habeas relief that he wanted his trial attorney to (1) subpoena two witnesses who allegedly would have testified that the pistol he was carrying at the time of the incident could only fire "blank" rounds, thus countering the testimony that he was carrying a "deadly weapon",[4] and (2) present evidence that he was temporarily insane at the time of the incident as a result of his methadone treatment for heroin addiction. When (according to his testimony at the habeas hearing) the defendant learned that his attorney did not intend to pursue these strategies, he informed the trial court that he no longer wished to retain her as his counsel. Hence, appellate counsel argues, the defendant was denied his *Faretta* right to conduct his own defense since the trial court required him to

proceed with his retained counsel despite their differences on trial strategy. Under these circumstances, it is argued, Moreno's failure to expressly state his desire to proceed with his trial pro se is of no consequence.

This contention raises a potentially difficult question on the scope of a defendant's rights under *Faretta.* However, we are unable to reach it on the facts presented by this case. One searches the state trial transcript in vain for an indication that Moreno informed the trial court of this divergence of strategies. Moreno stated only that his counsel was not "helpful" and would not "do things for him", and that he therefore wished that she would withdraw from the case. Nowhere in the state trial record does Moreno state that his attorney is conducting his defense contrary to his instructions or failing to advance viable defenses that he had instructed her to raise.[5] The record evidences nothing more than the defendant's general dissatisfaction with his attorney, an expression not uncommonly heard from a defendant who is facing the imminence of trial.

As noted earlier, we cannot infer both a waiver of counsel and a demand by the defendant to represent himself from the general statements of dissatisfaction with counsel contained in this record. Nor does this record present the issue of whether the *Faretta* right should be extended to situations in which the defendant clearly informs the trial court that his attorney refuses to present *his* defense and states particular facts in support of that claim, for nowhere in the state record did Moreno inform the court that his attorney had refused to raise the insanity defense and had declined to call witnesses who could testify that the gun could fire only blank rounds.[6]

---

**3.** *See* footnote 2, *supra.*

**4.** When the assault is not against a peace officer and did not cause serious bodily injury to a person, the use of a "deadly weapon" in the commission of the offense is a necessary element of aggravated assault under Texas law. Texas Penal Code § 22.02(a). The essential elements include that the offender "intentional-

ly or knowingly" threaten another with "imminent bodily injury" *id.,* § 22.01(a)(2).

**5.** *See* footnote 2, *supra.*

**6.** Of course, in a case in which the defendant expressly informs the trial court that his attorney refuses to present *his* defense, the court might be well-advised to investigate the claim

Accordingly, a defendant's request to be relieved of counsel in the form of a general statement of dissatisfaction with his attorney's work does not amount to an invocation of the *Faretta* right to represent oneself, especially when made on the morning of trial.[7] As we stated in *Fulford v. Maggio,* 692 F.2d 354 (5th Cir.1982), *rev'd on other grounds,* ⸺ U.S. ⸺, 103 S.Ct. 2261, 76 L.Ed.2d 794 (1983):

> ... we find nothing in *Faretta* to suggest that the Court intended to overrule the numerous decisions holding that the trial court may properly deny a defendant's motion to defend *pro se* when it is not made until the day of trial. Accordingly, it is our view that once trial begins the right to defend in the proper person ceases to be absolute. At that point it lies within the trial court's discretion whether to permit the accused to proceed *pro se.* In reaching its decision, the trial court must balance whatever prejudice is alleged by the defense against such factors as disruption of the proceedings, inconvenience and delay, and possible confusion of the jury.

*Id.* at 362. Furthermore, trial courts must necessarily be wary of last minute requests to change counsel lest they impede "the prompt and efficient administration of justice." *Gandy v. Alabama,* 569 F.2d 1318, 1323 (5th Cir.1978); *Bowman v. United States,* 409 F.2d 225, 227 (5th Cir.1969), *cert. denied,* 398 U.S. 967, 90 S.Ct. 2183, 26 L.Ed.2d 552 (1970).

In summary, since this record does not support the defendant's contention that the trial court infringed his Sixth Amend-ment rights under *Faretta,* we find no error in the trial court's denial of Moreno's trial date request to dismiss his retained counsel.

## B. Ineffective Assistance of Counsel

The second prong of Moreno's Sixth Amendment argument relates to the effectiveness of his state trial attorney. Independent of his assertion that the trial court denied his *Faretta* right to present his own defense, Moreno claims that his trial attorney was ineffective since she (1) failed to raise the defense that Moreno was temporarily insane at the time of the incident and (2) failed to subpoena two witnesses who would have testified that the gun Moreno used could only fire blank rounds, thus negativing the state's assertion that it was a deadly weapon. For the reasons stated below, we agree with the district court's conclusion that the defendant was not denied effective assistance of counsel.

We begin by noting that the Sixth Amendment does not guarantee an accused errorless representation by counsel, but rather only "counsel reasonably likely to render and rendering reasonably effective assistance." *MacKenna v. Ellis,* 280 F.2d 592, 599 (5th Cir.1960), *cert. denied,* 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961). *See, e.g., Hayes v. Maggio,* 699 F.2d 198, 201 (5th Cir.1983). Moreover, a habeas petitioner claiming ineffective assistance of counsel "bears the burden of demonstrating both an identifiable lapse on the part of his trial counsel and some actual, adverse impact upon the fairness of his trial resulting from

---

further on the record. If the defendant can state particular instances of disagreement between him and his counsel as to viable defenses, the defendant's Sixth Amendment rights as defined in *Faretta* are arguably implicated, requiring either that the court appoint or allow the accused to retain new counsel or that the defendant be allowed to proceed pro se. Where, as here, the defendant refers to no particular instances of disagreement over the presentation of his defense, but only expresses a general dissatisfaction with counsel, we cannot find the absence of further inquiry by the trial court to be error. *Accord, Fulford v. Maggio,* 692 F.2d 354, 362 (5th Cir.1982) *rev'd on*

other grounds, ⸺ U.S. ⸺, 103 S.Ct. 2261, 76 L.Ed.2d 794 (1983).

7. The defendant claims that he could not have made his request to dismiss counsel prior to the trial date since he had been incarcerated prior to trial and did not learn of his counsel's trial strategy until the morning of trial. However, since the defendant did not support his request with particular instances of disagreements with his attorney, *see* footnote 6 *supra,* the trial court did not reach the further issue of the timeliness of the defendant's request. For this reason, we need not pass on the validity of the defendant's excuse for his last minute request.

that lapse." *Boyd v. Estelle,* 661 F.2d 388, 389–90 (5th Cir.1981).

The first lapse identified by Moreno is the failure of his counsel to raise the defense of temporary insanity. In his petition for habeas corpus relief, Moreno alleges that "Ms. Hemphill [his attorney] was informed of petitioner's addiction to narcotics at the time of his arrest, but . . . failed and refused, contrary to petitioner's instructions, to investigate the possible defense [of temporary insanity]." In the evidentiary hearing on Moreno's petition, Ms. Hemphill (Moreno's state trial attorney) stated that she had considered the defense, but, assessing the unlikelihood of a local jury accepting a temporary insanity defense based on heroin addiction, had decided to "come up with something a little better", namely to try to raise a reasonable doubt as to whether Moreno had intentionally and knowingly (an essential element) threatened another with bodily harm, as required for conviction (*see* note 4). Moreno contends that his attorney's decision to abandon the temporary insanity defense without substantial investigation constitutes an "identifiable lapse" prejudicial to the presentation of his defense.

■ The standard governing a defense counsel's strategic choice not to investigate a certain line of defense or pursue that defense at trial was enunciated in *Washington v. Strickland,* 693 F.2d 1243 (5th Cir.1982) (en banc), *cert. granted,* —— U.S. ——, 103 S.Ct. 2451, 77 L.Ed.2d 1332 (1983). In *Washington,* we noted that "given the finite resources of time and money that are available to defense counsel, fewer than all plausible lines of defense will be the subject of substantial investigation. . . . The choice by counsel to rely upon certain lines of defense to the exclusion of others before investigating all such lines is a strategic choice." *Id.* at 1254–55. It follows from these principles that a defense counsel must make professional assessments of both the plausibility of a defense and its prospects for success at trial. *Cf. Jones v. Barnes,* —— U.S. ——, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) (standards for appellate

counsel). Thus, a defense attorney "need not investigate lines of defense that he has chosen not to employ at trial" so long as his assumptions about a line of defense are reasonable given the totality of the circumstances and his decision not to pursue the defense is a reasonable strategic choice based upon those assumptions. *Washington, supra,* 693 F.2d at 1255.

In the present case, the district court clearly assessed the reasonableness of the defense counsel's strategic choice given the totality of the circumstances. Adopting the findings and conclusions of the Magistrate in the evidentiary hearing on Moreno's petition, the court stated:

> The evidence produced by petitioner shows, at best, that he was under the treatment of a psychiatrist which was apparently standard operating procedure for everyone enrolled in the methadone treatment program; petitioner has not shown anything to establish that he was actually insane at the time of the offense. The testimony by counsel to the effect that she was not advised of anything which would in her opinion give rise to a temporary insanity defense is credible. Her decision not to have petitioner examined by a psychiatrist appears to be part of a coherent trial strategy and it thus does not constitute ineffective assistance of counsel.

■ We are unable to disagree with the district court's conclusion that the decision of Moreno's attorney not to pursue the temporary insanity defense was a reasonable strategic choice based upon a reasonable professional assessment of the plausibility of the defense and its likelihood of success. We therefore find no merit to Moreno's contention that his attorney was ineffective for failing to investigate fully or present at trial the defense of temporary insanity.

Moreno further contends that his counsel was ineffective since she failed to subpoena two witnesses who told her during an office interview that Moreno's gun was only capable of firing "blank" rounds. Both of these witnesses, Ronnie Stafford and Monica Recindus, were participants in the shoplifting

incident and had been arrested along with the defendant. Neither, however, appeared as a witness in the initial evidentiary hearing on Moreno's habeas corpus petition.

Monica Recindus, however, did execute an affidavit in support of Moreno's petition stating that she had personal knowledge that the gun used by Moreno was a "blank" gun. Although her affidavit does not state that she informed Moreno's attorney of this fact, Johnny Moreno, the defendant's brother, testified at the evidentiary hearing that he informed the defense counsel that Monica Recindus could testify that the pistol was a "blank". Furthermore, Ronnie Stafford did testify at a supplemental evidentiary hearing that he told Moreno's attorney before trial that he would testify that the gun was a "blank" gun.

When questioned at the evidentiary hearing, Moreno's attorney stated that she recalled interviewing both of these witnesses, but did not recall either of them telling her that the pistol could only fire "blank" rounds. She stated that had they so informed her, she would have called them as witnesses despite their obvious bias toward the defendant.

Faced with this conflicting testimony, the district court, adopting the findings of the Magistrate, found that the defense counsel's testimony was the credible version of the events at issue. The court stated:

> Based upon counsel's testimony, it thus appears that, contrary to what they may have told petitioner [Moreno], Stafford and Recindus did not state unequivocally to counsel that the pistol used was a blank starter pistol; ....

 Of course, credibility determinations are findings of fact that will not be set aside on appeal unless found to be clearly erroneous given the totality of the evidence in the record. *Hayes v. Maggio,* 699 F.2d 198, 201 (5th Cir.1983). Considering the evidence presented, and the apparent bias of the defendant's brother and colleagues in the criminal act, we do not find the district court's decision to credit the defense counsel's testimony to be clearly erroneous. Moreover, as we stated in *Buck-*

*elew v. United States,* 575 F.2d 515, 521 (5th Cir.1978), "complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Id.*

Therefore, for the reasons stated above, we find no merit to Moreno's claim that he was denied effective assistance of counsel.

## II. *Jury Selection Claim*

Moreno contends that he was denied his right to a fair and impartial jury since the trial court improperly refused to allow his attorney an opportunity to voir dire the prospective jurors on the range of punishment that he may face upon conviction. Specifically, the petitioner claims that Texas law permitted him to examine the jurors as to their willingness to impose an enhanced sentence of life imprisonment should they be required to do so at the punishment phase of trial. The district court dismissed this contention for failing to state "a claim for relief based upon the Constitution or laws of the United States", as is required for federal habeas relief pursuant to § 2254.

 Moreno notes that his right to question jurors as to their attitudes on enhanced punishment is well-established in Texas jurisprudence. *Martinez v. Texas,* 588 S.W.2d 954, 956 (Tex.Cr.App.1979); *Bevill v. Texas,* 573 S.W.2d 781, 783 (Tex.Cr.App.1978) (en banc). In *Bevill,* the court noted that "where the jury may be called upon to assess punishment, both the state *and* the defendant have a right to qualify the jury on the full range of punishment." *Bevill, supra,* 573 S.W.2d at 956 (emphasis added). Hence, arguably, Moreno's contention has merit that the state trial court, properly applying Texas state law, should have let him question the prospective jurors on the range of punishment that they may have been called upon to impose. On Moreno's direct appeal from his conviction, however, the Texas Court of Criminal Appeals held that "[a]ny error committed by the trial court in the voir dire was rendered harmless

by the more favorable jury charge given at the punishment stage." *Moreno v. Texas,* 541 S.W.2d 170, 173–74 (Tex.Cr.App.1976). It is not our function as a federal appellate court in a habeas proceeding to review a state's interpretation of its own law. *Skipper v. Wainwright,* 598 F.2d 425, 427 (5th Cir.), *cert. denied,* 444 U.S. 974, 100 S.Ct. 469, 62 L.Ed.2d 389 (1979).

▮▮▮ Moreover, Moreno's claim in this regard does not raise an issue beyond those discussed above, which are entirely matters of Texas jurisprudence. The right to examine jurors on the possible range of punishment, as recognized in *Bevill* and *Martinez,* has its source in that state's law of criminal procedure, not the federal constitution. See *Bevill, supra,* 573 S.W.2d at 783, and *Martinez, supra,* 588 S.W.2d at 956–957. A defendant does enjoy a federal constitutional right to a trial before a fair and impartial jury, with the concomitant right to peremptorily challenge a limited number of prospective jurors in the selection proceedings. *Swain v. Alabama,* 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965). Nevertheless, Moreno's contention that he should have been able to examine the jury on the possible range of punishment simply does not present a federal constitutional claim. The defendant's claim "is purely a question of state criminal procedure and does not present an issue cognizable in a federal habeas corpus action." *Rubio v. Estelle,* 689 F.2d 533, 536 (5th Cir.1982); *Stewart v. Estelle,* 634 F.2d 998, 999 (5th Cir.1981).

III. *Eighth Amendment Claim*

▮▮▮ In his third claim for relief, Moreno contends that his enhanced sentence of life imprisonment is so disproportionate to the offense committed, aggravated assault, that it violates the Eighth Amendment's prohibition against cruel and unusual punishment. The district court summarily rejected the petitioner's claim based on the decision of the United States Supreme Court in *Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), which upheld the constitutionality of the Texas habitual offender statute.

In the ultimate analysis, we agree with the district court's dismissal of this claim, but we are unable to reject the claim without consideration of the principles modifying *Rummel* as enunciated by the Supreme Court decision in *Solem v. Helm,* —— U.S. ——, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), handed down after the oral argument in this appeal.

Prior to his conviction for aggravated assault, Moreno had been twice before convicted of felonies, i.e. unlawful possession of narcotics paraphernalia and theft of corporeal personal property with a value in excess of fifty dollars.[8] In the punishment phase of the trial, the jury found the state's allegations of both of these prior convictions to be "true", and the court imposed a mandatory sentence of life imprisonment pursuant to Texas Penal Code § 12.42(d). Moreno objects to this sentence as cruel and unusual and argues that the *Solem* decision requires that his case be remanded to the district court for a detailed analysis of his claim consistent with the teaching of that case.[9]

We are unable to agree. The *Solem* decision does set forth "objective criteria" to be

---

**8.** As a preliminary matter, Moreno argues that it was unfair for him to be considered under the Texas habitual offender statute since his two prior convictions were no longer considered "felonies" at the time of his third conviction. The Texas Court of Criminal Appeals found that, as a matter of state law, it was proper to consider the two prior convictions as "felonies" for enhancement purposes. *Moreno v. Texas,* 541 S.W.2d 170, 174 (Tex.Cr.App.1976). We find no reason, constitutional or otherwise, to reject that finding.

**9.** The *Solem* court established a three-part framework of analysis for Eighth Amendment

claims that a sentence is disproportionate to the offense committed. The Court envisioned that this analysis would involve thoughtful consideration of primarily three factors; (1) the gravity of the offense and the harshness of the penalty, (2) a comparison of the defendant's sentence with sentences imposed on other criminals for other crimes in the *same* jurisdiction, and (3) a comparison of the defendant's sentence with sentences imposed for the same crime in *other* jurisdictions. *Solem, supra,* 103 S.Ct. at 3010–11.

used in "a court's proportionality analysis under the Eighth Amendment." —— U.S. at ——, 103 S.Ct. at 3010–11. Nevertheless, the Court expressly did not require extensive analysis with regard to every petition for habeas corpus relief raising that issue.[10] Thus, in responding to the *Solem* dissent's contention that this new approach effectively overruled *Rummel v. Estelle, supra,* the majority noted:

> Contrary to the suggestion in the dissent, *post* [103 S.Ct.], at 3017–3021, our conclusion today is not inconsistent with *Rummel v. Estelle.* The *Rummel* Court recognized—as does the dissent, see *post* [103 S.Ct.], at 3020, n. 3—that some sentences of imprisonment are so disproportionate that they violate the Eighth Amendment. 445 U.S. at 274, n. 11, 100 S.Ct. at 1139, n. 11. Indeed, *Hutto v. Davis,* 454 U.S. [370] at 374, and n. 3, 102 S.Ct. [703] at 705, and n. 3 [70 L.Ed.2d 556], makes clear that *Rummel* should not be read to foreclose proportionality review of sentences of imprisonment. *Rummel* did reject a proportionality challenge to a particular sentence. But since the *Rummel* Court—like the dissent today—offered no standards of determining when an Eighth Amendment viola-

tion has occurred, *it is controlling only in a similar factual situation.* Here the facts are clearly distinguishable. Whereas Rummel was eligible for a reasonably early parole, Helm, at age 36, was sentenced to life with no possibility of parole. See *supra* [103 S.Ct.], at 3013–3014, and 3015–3016.

*Solem, supra,* 103 S.Ct. at 3016–17, n. 32 (emphasis added). Thus, the Supreme Court stated that *Rummel* still provides the rule in cases with fact situations not clearly distinguishable from that in *Rummel* itself. Furthermore, a primary consideration in that regard seems to be whether or not parole is available to the defendant within a reasonable period of time.[11]

We do not find the facts of Moreno's case to be "clearly distinguishable" from *Rummel.* Both Moreno and Rummel were sentenced as third offenders under the Texas habitual offender statute after their respective juries found that they had twice before been convicted of felonies.[12] Accordingly, Rummel received a life sentence with parole eligibility in approximately 12 years. *Rummel, supra,* 445 U.S. at 267, 100 S.Ct. at 1136. Moreno also received a life sentence and is apparently eligible for parole in ap-

**10.** The Supreme Court noted:

> Contrary to the dissent's suggestions, *post* [103 S.Ct.], at 3017, 3022, we do not adopt or imply approval of a general rule of appellate review of sentences. Absent specific authority, it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence; rather, in applying the Eighth Amendment the appellate court decides only whether the sentence under review is within constitutional limits. In view of the substantial deference that must be accorded legislatures and sentencing courts, a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate. *Solem, supra,* 103 S.Ct. at 3009, n. 16.

Of course, a determination of whether a sentence is "within constitutional limits" will often require at least a perfunctory *Solem* analysis.

**11.** We note in passing that the Supreme Court specifically distinguished *Solem* from *Rummel* on the basis of the availability of parole, although other distinguishing factors, such as the nature and number of offenses committed by

the two defendants, were present and could also have been considered in the comparison.

**12.** Rummel was sentenced pursuant to Article 63 of the Texas Penal Code, the forerunner of § 12.42(d) of the Texas Penal Code, under which Moreno was sentenced. As the Supreme Court noted in *Rummel,* "[w]ith minor revisions, [Article 63] has been recodified as Texas Penal Code Ann. 12.42(d) (1974)." *Rummel, supra,* 445 U.S. at 264, 100 S.Ct. at 1134.

This conclusion is confirmed by a comparison of the language of the two provisions. Article 63 provided that "[w]hoever shall have been three times convicted of a felony less than capital shall on such third conviction be imprisoned for life in the penitentiary." § 12.42(d) now reads:

> If it be shown on the trial of any felony offense that the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction he shall be punished by confinement in the Texas Department of Corrections for life.

proximately 20 years.[13] Thus, Moreno apparently faces a longer period of parole ineligibility than did Rummel. Any significance that might be attributable to this difference when comparing the two cases, however, is mitigated by the fact that Moreno's third conviction was for aggravated assault with a deadly weapon, a more serious offense than Rummel's third conviction (obtaining $120.75 by false pretenses). *Rummel, supra,* 445 U.S. at 266, 100 S.Ct. at 1135.

Therefore, because we do not find Moreno's case to be "clearly distinguishable" from the facts of *Rummel v. Estelle, supra,* we deny the petitioner's request for a remand to the district court for a *Solem* analysis. Thus, bound by *Rummel,* we reject the petitioner's Eighth Amendment claim.

*Conclusion*

Finding no merit to the petitioner Moreno's contentions, we AFFIRM the judgment of the district court dismissing the petition for § 2254 relief.

AFFIRMED.

---

**13.** Article 42.12, § 15(b) of the Texas Code of Criminal Procedure provides:

A prisoner under sentence of death is not eligible for parole. If a prisoner is serving a sentence for the offenses listed in Section 3f(a)(1) of this Article or if the judgment contains an affirmative finding under Section 3f(a)(2) of this Article, he is not eligible for release on parole until his actual calendar time served, without consideration of good conduct time, equals one-third of the maximum sentence or 20 calendar years, whichever is less, but in no event shall he be eligible for release on parole in less than two calendar years. All other prisoners shall be eligible for release on parole when their calendar time served plus good conduct time equals one-third of the maximum sentence imposed or 20 years, whichever is less.

Although Moreno was not convicted of an offense listed in § 3f(a)(1), he may fall within the ambit of § 3f(a)(2), which reads in part:

Upon affirmative finding [sic] that the defendant used or exhibited a deadly weapon during the commission of an offense or during immediate flight therefrom, the trial court shall enter the finding in the judgment of the court. Upon an affirmative finding that the deadly weapon the defendant used or exhibited was a firearm, the court shall enter that finding in its judgment.

Moreno's conviction possibly included such a finding since the jury found him "guilty as charged" of aggravated assault with a deadly weapon. Even if this did not constitute an "affirmative" finding for the purposes of 3f(a)(2), Moreno would nevertheless be eligible for parole in approximately 20 years pursuant to the last sentence of § 42.12, § 15(b), which assigns a parole ineligibility period of 20 years (or one-third of the maximum, whichever is less) to "all other prisoners."