Gary Wayne SHANKLES

v.

DIRECTOR, TDCJ–ID.

No. 9:93–CV–186.

United States District Court,
E.D. Texas,
Lufkin Division.

March 8, 1995.

348

Gary Shankles, pro se.

### MEMORANDUM ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

HANNAH, District Judge.

Petitioner filed this habeas corpus petition pursuant to 28 U.S.C. § 2254.

The court heretofore ordered that this matter be referred to the Honorable Earl S. Hines, United States Magistrate Judge, at Beaumont, Texas, for consideration pursuant to applicable laws and orders of this court. The court has received and considered the Report of the United States Magistrate Judge filed pursuant to such order, along with the record, pleadings and all available evidence. No objections to the Report of the United States Magistrate Judge were filed by the parties.

Accordingly, the findings of fact and conclusions of law of the magistrate judge are correct and the report of the magistrate judge is **ADOPTED.** A final judgment will be entered in this case in accordance with the magistrate judge's recommendations.

### FINAL JUDGMENT

This action came on before the Court, Honorable John Hannah, Jr., District Judge, presiding, and the issues having been duly considered and a decision having been duly rendered, it is

ORDERED and ADJUDGED that this Petition for Writ of Habeas Corpus is DENIED. All motions by either party not previously ruled on are hereby DENIED.

*REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE*

HINES, United States Magistrate Judge.

This is a petition for a writ of habeas corpus filed by Gary Wayne Shankles, a convicted prisoner in the custody of the Texas Department of Criminal Justice, Institutional Division ("TDCJ–ID," formerly the Texas Department of Corrections, "TDC"), Eastham Unit. Jurisdiction is based on 28 U.S.C. § 2254.

This action was referred to a United States magistrate judge pursuant to Title 28 U.S.C. § 636, for review, evidentiary hearing if deemed necessary, and submission of a report and recommendation.

## I. NATURE OF THE CASE AND EXHAUSTION OF STATE REMEDIES

On February 19, 1982, in Edgewood, Texas, James H. Bullard was robbed at gunpoint in the driveway of his home. The robber instructed Bullard to remove his shoes, shirt, and pants, then fled in Bullard's pick-up truck.

Bullard ran to the house, grabbed a gun, and gave chase in another vehicle. He was unable to catch the robber. The robber abandoned Bullard's truck and entered another, kept waiting by an accomplice.

Approximately an hour after the robbery, the police stopped petitioner at a rural roadblock. He was ordered out of his white pick-up truck and placed under arrest with his passenger, Daniel Reardon.

The police brought Bullard to the site of the arrest and Bullard identified petitioner as the robber. Bullard claimed to have been robbed of $1200. The police confiscated six one-hundred dollar bills from petitioner's person.

The next day, a search warrant for petitioner's truck was obtained. Six one-hundred dollar bills were found behind the dashboard.

Petitioner was indicted for aggravated robbery in the 294th District Court of Van Zandt County, Texas. He entered a plea of not guilty in Cause No. 12,975. Petitioner further was charged with prior convictions for enhancement of punishment purposes. He pleaded not true to the enhancement provision.

At trial, petitioner claimed Bullard owed Reardon money from gambling debts. Petitioner argued he had accompanied Reardon to Bullard's house and Bullard had given them $1200 and a .357 caliber handgun as partial payment of the debt. Petitioner contended that after he and Reardon left the house, Bullard concocted the entire robbery to recover his payment and handily dispose of his debt.

On October 13, 1983, a jury convicted petitioner of aggravated robbery and found the enhancement conviction true. The jury assessed punishment at fifty years confinement in TDC.

The trial court's judgment was affirmed on direct appeal by the Court of Appeals for the Twelfth Supreme Judicial District of Texas. *Shankles v. State,* No. 12–84–0005–CR (Tex. App.—Tyler Mar. 28, 1985). On January 22, 1986, the Texas Court of Criminal Appeals rejected Shankles petition for discretionary review. *Shankles v. State,* P.D.R. No. 502–85 (Tex.Crim.App.1986). Petitioner also filed two state writes of habeas corpus, both of which were denied without written orders. *Ex Parte Shankles,* Application No. 17,875–02 (Tex.Crim.App. Oct. 7, 1992); *Ex Parte Shankles,* Application No. 17,875–1 (Tex. Crim.App. Mar. 3, 1988). Due to the procedural history of this case, it is properly before this court.

## II. STANDARD OF REVIEW FOR FEDERAL EVIDENTIARY HEARING

▮▮▮ To be merit a federal evidentiary hearing, the burden is on the habeas corpus petitioner to allege facts which, if proved, would entitle him to relief. *Taylor v. Maggio,* 727 F.2d 341, 347 (5th Cir.1984). No hearing is required where the petitioner alleges only conclusory allegations, *Mattheson v. King,* 751 F.2d 1432, 1448 (5th Cir.1985), *cert. dismissed,* 475 U.S. 1138, 106 S.Ct. 1798, 90 L.Ed.2d 343 (1986), or where the record is complete and the evidence presented is sufficient to provide a full review of the

petitioner's claim. *Skillern v. Estelle,* 720 F.2d 839, 850–51 (5th Cir.1983), *cert. denied sub nom., Skillern v. Procunier,* 469 U.S. 873, 105 S.Ct. 224, 83 L.Ed.2d 153 (1984); *Baldwin v. Maggio,* 704 F.2d 1325, 1327–28 (5th Cir.1983), *cert. denied,* 467 U.S. 1220, 104 S.Ct. 2669, 81 L.Ed.2d 374 (1984). Unless the habeas corpus petitioner alleged with specificity a claim upon which relief can be granted and demonstrated his state hearing was not a full, fair, or adequate hearing, *see* 28 U.S.C. § 2254(d), the decision of whether to hold an evidentiary hearing is discretionary in the district court. *Daigre v. Maggio,* 705 F.2d 786, 787–88 (5th Cir.1983).

No federal evidentiary hearing is required in this case. The record is complete and the evidence presented at trial and in the state habeas corpus proceeding is sufficient to provide full review of petitioner's claims.

### III. DISCUSSION

Petitioner asserts the following points of error:

1. There was insufficient evidence proffered at trial to support the jury's verdict of guilty.

2. Disposal of evidence seized from the offense did not conform to state law.

3. He was subjected to an illegal arrest.

4. He was subjected to an illegal search and seizure.

5. The victim's in-court identification should have been suppressed.

6. Texas Code of Criminal Procedure art. 42.12, § 15(b) is an unconstitutional bill of attainder.

7. Texas Code of Criminal Procedure art. 42.12, § 15(b) violates the Double Jeopardy Clause.

8. Texas Penal Code § 12.42 does not authorize sentences for aggravated robbery.

9. A fingerprint card used to identify the petitioner should have been suppressed.

10. The jury was not instructed on the presumption of unfavorable evidence.

11. The jury was not given a definition of reasonable doubt.

12. Petitioner had ineffective assistance of counsel at trial and upon appeal.

13. Petitioner was without counsel at a critical stage in his prosecution.

None of petitioner's arguments form the basis of habeas corpus relief. Each of petitioner's points will be discussed *infra.*

### (1) *There was sufficient evidence proffered at trial to support the jury's verdict.*

■ Petitioner contends Bullard's testimony at trial was perjurious and uncorroborated. Specifically, he argues the state presented no witness who saw a high-speed chase, heard gunshots, saw Bullard in a state of undress or with $1200 before the robbery. According to petitioner, there "was not a scintilla of evidence presented that would add credibility to Bullard's testimony."

The correct standard of review for the evaluation of a sufficiency of evidence habeas claim is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Testimony cannot be declared incredible as a matter of law unless it is "so unbelievable on its face that it defies physical laws." *United States v. Gardea Carrasco,* 830 F.2d 41, 43 (5th Cir.1987).

Review of the trial record reveals a rational jury could have chosen to believe Bullard and disbelieve the defense's rendition of the facts. The essence of a jury's function is to make these kinds of credibility judgments. Petitioner's mere conclusory assertion that Bullard was lying does not rise to the level necessary to usurp a jury's credibility determinations. Moreover, this court is not cognizant of any state or federal law which requires eyewitness testimony to be corroborated by independent witnesses or otherwise.

### (2) *Compliance with state procedural law is not an issue properly before the court.*

Petitioner claims the six hundred-dollar bills taken from behind his truck's dashboard were wrongfully released to Bullard by the Sheriff of Van Zandt County, in violation of

Texas State law. *SEE* TEX.CODE CRIM.PROC. ANN. arts. 18.10, 18.11 (Vernon Supp.1991). Petitioner did not have the opportunity to inspect the bills and collect forensic evidence, including fingerprints. He claims the violation unduly prejudiced his opportunity to disprove his involvement in the crime. This ground for habeas relief lacks merit.

■ A habeas petitioner must establish a violation of the federal Constitution or laws or treaties of the United States before a federal court can grant a writ of habeas corpus. *Showery v. Samaniego,* 814 F.2d 200, 201 (5th Cir.1987). The failure to follow state procedural requirements does not mandate federal habeas corpus relief. *Smith v. Phillips,* 455 U.S. 209, 221, 102 S.Ct. 940, 948, 71 L.Ed.2d 78 (1982); *Neyland v. Blackburn,* 785 F.2d 1283 (5th Cir.), *cert. denied,* 479 U.S. 930, 107 S.Ct. 399, 93 L.Ed.2d 352 (1986); *Moreno v. Estelle,* 717 F.2d 171, 179 (5th Cir.1983), *cert. denied sub nom., Moreno v. McKaskle,* 466 U.S. 975, 104 S.Ct. 2353, 80 L.Ed.2d 826 (1984). Consequently, this allegation is beyond the scope of the court's jurisdiction and its inquiry.

**(3)** *Petitioner's allegations of Fourth Amendment violations are not cognizable in a habeas corpus proceeding.*

Petitioner alleges he is entitled to habeas relief because his conviction is based on evidence obtained incidental to both an unconstitutional arrest and search.

■ Even assuming *arguendo* petitioner's claim is valid, he is not entitled to relief. A Fourth Amendment claim is not recognized in a federal habeas corpus proceeding as long as the state has provided an opportunity for a full and fair litigation of the claim. *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). The Constitution requires only that the state provides processes where petitioner is given the opportunity, regardless of whether petitioner avails himself of such. *Caver v. Alabama,* 577 F.2d 1188, 1192 (5th Cir.1978).

■ Petitioner has not shown that the Texas state courts have denied him a full and fair opportunity to present his Fourth Amendment claims. Petitioner had such an opportunity prior to trial, upon direct appeal, and upon his writs of habeas corpus within the state judicial system. Further analysis of petitioner's argument therefore is unwarranted.

**(4)** *The victim's "show-up" identification was not unduly suggestive and therefore the in-court identification was properly permitted.*

Petitioner argues the trial court erred in refusing to suppress Bullard's in-court identification of Shankles. Petitioner contends the "show-up" identification of petitioner at the arrest site caused irreparable damage to the victim's ability to recognize the true robber. Bullard, petitioner argues, had been told by the police they had just arrested two suspects in a white truck. When Bullard arrived at the scene, petitioner was standing in the lights of several police cars, by a white pick-up truck, which allegedly made it easier for Bullard wrongfully to pinpoint him.

■ First, the court must determine if the method of identification employed by the police was unnecessarily suggestive. *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). Factors for the court to consider include: (1) the witness's opportunity to view the defendant at the time of the crime; (2) the witness's degree of attention at the time of the crime; (3) the accuracy of the witness's prior description of the defendant; (4) the witness's level of certainty; and (5) the length of time between the crime and the confrontation. *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

■ Based on the *Neil* factors, it was not an error to allow Bullard to identify Shankles in court. Bullard testified he stood a mere three to four feet from the robber at the time of the crime. The robber was not wearing a mask, nor made any attempt to hide his face. Furthermore, the driveway was illuminated by two floodlights. The crime lasted approximately four minutes, a significant period of time in which to render an accurate mental portrait. In addition, the show-up occurred only an hour to ninety minutes after the actual crime. Furthermore, Bullard ex-

pressed no doubt, at any time, that Shankles was the man who robbed him. Based on these, there was no substantial likelihood of misidentification at the show-up or otherwise existed and the in-court identification was properly admitted.

### (5) Texas Code of Criminal Procedure art. 42.12, § 15(b) is not a bill of attainder.

Petitioner claims that the Texas Code of Criminal Procedure art. 42.12, § 15(b), amended as art. 42.18, is a bill of attainder. As such, petitioner argues the statute violates the United States Constitution. U.S. CONST. art. 1, § 9, cl. 3.

This provision of Texas law provides,

If a prisoner is serving a sentence for the offenses listed in Section 3(f)(a)(1) [including aggravated robbery] . . . he is not eligible for release on parole until his actual calendar time served, without consideration of good conduct time, equals one-third of the maximum sentence or twenty calendar years, whichever is less, and in no event shall he be eligible for release on parole in less than two calendar years. All other prisoners shall be eligible for release on parole when their calendar time served plus good conduct time equals one third of the maximum sentence imposed or 20 years, whichever is less.

TEX.CODE CRIM.PROC.ANN. art. 42.12, § 15(b), now TEX.CODE CRIM.PROC.ANN. art. 42.18, § 3f(a)(1)(d) (Vernon 1995).

Petitioner contends a "bill of attainder" is "a legislative act which inflicts punishment without a judicial trial." See Ballantine's Law Dictionary 135 (3d ed. 1969). Because he contends there was no judicial trial employed to bring this legislative enactment into existence, punishing him under it is unconstitutional. This argument is fundamentally flawed.

Petitioner has only partially defined a bill of attainder. He fails to note that the legislative act must be directed toward an identifiable person or group. See, e.g., Katherine M. Sheehan, Note, And Then There Was One: Peter Gabriel John McMullen's Bill of Attainder Challenge to the U.K.–U.S. Supplementary Extradition Treaty, 57 ALB. L.REV. 235 (1994). Because an actual bill of attainder requires the legislature to direct punitive action against so small a group or an individual, they are exceedingly rare. The United States Supreme Court has found a statutory act to be an impermissible bill of attainder on only five occasions in this country's history. See United States v. Brown, 381 U.S. 437, 85 S.Ct. 1707, 14 L.Ed.2d 484 (1965); United States v. Lovett, 328 U.S. 303, 66 S.Ct. 1073, 90 L.Ed. 1252 (1946); Pierce v. Carskadon, 83 U.S. (16 Wall.) 234, 21 L.Ed. 276 (1873); Ex Parte Garland, 71 U.S. (4 Wall.) 333, 18 L.Ed. 366 (1867); Cummings v. Missouri, 71 U.S. (4 Wall.) 277, 18 L.Ed. 356 (1867).

To succeed on this claim, petitioner must show the Texas State Legislature sought to deprive him of his liberty without a judicial trial when it passed article 42.12, section 15(b). Clearly, he cannot do this. The law is of neutral application. Furthermore, petitioner had the benefit of a trial of his peers prior his punishment. Consequently, this statute is not a bill of attainder.

### (6) Texas Code of Criminal Procedure article 42.12, § 15(b) does not violate the Double Jeopardy Clause.

Petitioner also attacks [former] article 42.12 because it limits his eligibility for parole in that he used a deadly weapon in the commission of a robbery. He alleges that assessing his sentence at fifty years and then limiting his eligibility for parole constitutes double jeopardy in violation of the Fifth Amendment of the Constitution. U.S. CONST. amend V.

"The guarantee against double jeopardy protects against multiple punishments for the same offense and against a second prosecution for the same offense after either an acquittal or conviction." Showery, 814 F.2d at 202 (5th Cir.1987). Petitioner has not endured two distinct punishments for the same crime. He merely has had his one and only punishment more severely assessed than would a person who did not utilize a weapon in the course of committing a robbery. As a result, he has not been sentenced in violation of the Double Jeopardy Clause.

**(7) Petitioner was properly convicted as a repeat offender.**

■ Petitioner argues his offense, aggravated robbery, may not be punished under Texas's enhancement of punishment statute for repeat or habitual offenders. TEX.PENAL CODE ANN. art. 12.42(c) (Vernon 1991). According to petitioner, the word "aggravated" does not appear in this sections's text and this makes application of the section unauthorized in his case. Instead, petitioner claims the repeat offender statute permits sentence enhancement of those convicted of a first-degree felony.

This is a wholly semantic and meritless argument. Aggravated robbery is a first degree felony. TEX.PENAL CODE ANN. art. 29.03(b) (Vernon 1991). The absence of the word "aggravated" does not invalidate its application to petitioner's case.

**(8) A fingerprint card from the Texas Department of Corrections, used to prove petitioner's prior conviction and enhance his sentence, was competent evidence.**

Petitioner claims his prison "fingerprint card" should not have been allowed into evidence by the trial court. This card was contained in a "pen packet"[1] prepared by inmates at TDC. Petitioner claims this card is incompetent evidence because it was compiled by TDC inmates and therefore constitutes unreliable hearsay. He alternatively argues that allowing prisoners to perform this sensitive identification function renders any felony conviction in Texas prior to 1982 inadmissible for purposes of enhancement. This argument is without merit.

■ Fingerprint cards and corresponding pen packets are considered competent and admissible evidence to prove habitual or repeat offender status under both Federal and Texas evidentiary rules. See, e.g., United States v. Vidaure, 861 F.2d 1337 (5th Cir. 1988) (public records exception to hearsay rule); Reagan v. State, 423 S.W.2d 335, 338 (Tex.Crim.App.1967); Martini v. State, 371 S.W.2d 387, 389 (Tex.Crim.App.1963).

Petitioner offers no support for his assertion that allowing prisoners to compile fingerprints vitiates the pen packet as a method of proof. This ground therefore does not entitle him to habeas corpus relief.

**(9) The two errors alleged in the jury instructions do not form a basis of habeas corpus relief.**

Petitioner argues that after the trial judge denied his request to exclude mention of the money seized from the truck, he requested the court inform the jury that the state's failure to produce the money at trial would support a presumption that the evidence was unfavorable to the state. See, e.g., H.E. Butt Grocery Co. v. Bruner, 530 S.W.2d 340 (Tex. Civ.App.—Waco 1975, writ dism'd). Additionally, he complains the jury was not given a definition of "reasonable doubt," which left them struggling aimlessly with their own disparate definitions.

A federal court's habeas corpus inquiry "is not whether there was prejudice to the defendant [by the erroneous or omitted jury instruction], or whether state law was violated, but whether there was prejudice of a constitutional magnitude." Sullivan v. Blackburn, 804 F.2d 885, 887 (5th Cir.1986), cert. denied, 481 U.S. 1019, 107 S.Ct. 1901, 95 L.Ed.2d 507 (1987). The question before this court, then, is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violated due process." Cupp v. Naughten, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973).

■ With regard to petitioner's argument regarding the presumption of unfavorable evidence, the Twelfth Court of Appeals addressed this point upon petitioner's state appeal and found "[t]here is nothing in the record to suggest that the State was acting in bad faith to destroy evidence which tended to exculpate Shankles. The record simply shows that the money was returned to Bullard, the rightful owner." Shankles, No. 1284–0005–CR, at 5. Clearly, the failure to introduce the money as evidence weakened the state's case against petitioner, but the

---

1. A pen packet is a dossier of a prisoner's identifying information, such as tattoos, birth marks, fingerprints, and scars.

resulting conviction does not represent a breach of due process.

■ Likewise, "the beyond a reasonable doubt standard is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires then to do so as a matter of course." *Victor v. Nebraska,* —— U.S. ——, ——, 114 S.Ct. 1239, 1243, 127 L.Ed.2d 583 (1994). The trial judge in Shankles case charged the jury with finding guilt beyond a reasonable doubt several times, but provided no express and distinct definition of the term "reasonable doubt." The highest court in the country has declared this to be a constitutionally sufficient jury charge. It therefore raises no error in petitioner's conviction.

### (10) *Petitioner's trial and appellate counsel were effective.*

Petitioner raises four points regarding ineffective assistance of counsel. Each one fails to provide him the relief sought.

The Sixth Amendment of the United States Constitution requires that counsel render effective assistance in criminal cases. *Diaz v. Martin,* 718 F.2d 1372, 1378 (5th Cir.1983), *cert. denied,* 466 U.S. 976, 104 S.Ct. 2358, 80 L.Ed.2d 830 (1984). In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court established a two part test for deciding ineffective assistance of counsel claims. Under this test, petitioner must show that counsel's performance was deficient, and that the deficient performance prejudiced the defense. *Id.* at 687, 104 S.Ct. at 2064. To prove a deficiency, petitioner must show that counsel's representation fell below an objective professional standard of reasonableness. *Id.* at 690, 104 S.Ct. at 2065.

Because of the difficulties of this inquiry, the courts indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, this is, the petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Id.* A reviewing court need not consider the deficiency prong if it concludes the petitioner does not demonstrate prejudice. *Id.* at 693, 104 S.Ct. at 2067.

■ First, petitioner alleges his appellate counsel failed to raise his insufficient evidence argument on direct appeal. This court has already found petitioner's claims of insufficient evidence are without merit. Therefore, petitioner was not prejudiced by appellate counsel's failure to raise this argument.

■ Second, petitioner alleges his trial counsel submitted a discovery motion that had been submitted in his co-defendant's case. The attorney crossed out the co-defendant's name and added that of Shankles. Petitioner claims this proves his attorney did not give his case the attention it deserved.

Petitioner may have stated a claim for sloppiness, but he doesn't state one for relief on this point. Petitioner has not stated what he expected to gain with a fresh discovery motion. He has simply failed to show, or even argue, that a new motion would have revealed something new or different that would have changed the outcome of his case. Consequently, he was not prejudiced.

■ Petitioner also claims trial counsel should have objected to the $600 seized from his person at the time of his arrest. However, it is clear petitioner's attorney had no basis for objecting to the introduction of the money. Bullard testified he had been robbed of $1200. Six hundred dollars was taken from behind petitioner's dashboard and another six was found on his person. Clearly, the presence of the money was rightfully introduced. Again, petitioner has not been prejudiced.

Lastly, petitioner claims his counsel did not investigate the law regarding his escape from jail. Again, petitioner shows no prejudice which could have arose from any deficiency because the trial judge carefully instructed the jury "you cannot consider said testimony [of petitioner's flight from jail] unless you find and believe beyond a reasonable doubt that the defendant fled from custody to avoid prosecution in this case." This instruction contradicts petitioner's assertion that the jury was instructed by the judge that "an inference of guilt may be drawn" from his flight.

**(11)** *Petitioner was not deprived of counsel at any critical stage of his prosecution.*

Petitioner argues he was never present when his first three appointed attorneys withdrew from his case. Consequently, he urges that this deprived him of his right to counsel as guaranteed by the Sixth Amendment. He claims this inhibited his ability to assist in his defense.

Petitioner's first attorney, Robert Bartlett, Esq., was appointed on March 11, 1982. On May 5, petitioner was indicted for the robbery. Bartlett's motion to withdraw based on a conflict of interest was granted on May 13, 1982. Joe Hendley, Esq. immediately was appointed to represent petitioner. Hendley withdrew on June 4. Bobby Sanders, Esq. was appointed the same day, and withdrew on June 15. Finally John Alexander, Esq., petitioner's trial counsel, was appointed on June 15.

The Sixth Amendment right to counsel is violated if a criminal defendant is denied counsel at a "critical stage" of prosecution. *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). A critical stage may be defined as one that substantially affects the defendant's rights. *Mempha v. Rhay*, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967). Recognized critical stages include trial, the initiation of judicial proceedings by arraignment or initial appearance, preliminary hearings, *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), some identification procedures, sentencing, *Mempha*, 389 U.S. at 134, 88 S.Ct. at 256, and police or prosecutorial interrogation. *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). The denial of counsel at a critical stage is not subject to harmless error analysis and enjoys the presumption of prejudice once counsel's absence is exhibited. *Penson v. Ohio*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988). *See also Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Petitioner does not show he was forced to undergo a critical stage without counsel. He does not allege he was forced to undergo a lineup identification procedure, or go before the court, or endure an interrogation without an attorney. He merely alleges that he should have been present when his attorneys were appointed and allowed to withdraw. The Supreme Court has not held the withdrawal of counsel is such a stage and this court discerns no rights substantially affected by the procedure. Consequently, no Sixth Amendment violation has occurred.

## IV. RECOMMENDATION

Petitioner's request for habeas corpus relief should be denied.

## V. OBJECTIONS

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Rodriguez v. Bowen*, 857 F.2d 275 (5th Cir.1988).