RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0165p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

LERON LIGGINS,

*Defendant-Appellant*.

No. 22-1236

─────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:18-cr-20071-1—Stephen J. Murphy III, District Judge.

Argued: May 4, 2023

Decided and Filed: August 3, 2023

Before: MOORE, CLAY, and MATHIS, Circuit Judges.

─────────────

## COUNSEL

**ARGUED:** Wade G. Fink, WADE FINK LAW, P.C., Birmingham, Michigan, for Appellant.
Erin S. Shaw, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.
**ON BRIEF:** Wade G. Fink, WADE FINK LAW, P.C., Birmingham, Michigan, for Appellant.
Erin S. Shaw, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

─────────────

## OPINION

─────────────

CLAY, Circuit Judge. Defendant Leron Liggins was indicted on one count of conspiracy to possess with intent to distribute and to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and one count of aiding and abetting the possession with intent to distribute heroin, in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2. At a pretrial hearing, the district judge remarked

that Liggins "look[ed] like a criminal to me" and that Liggins was doing "what criminals do." Liggins moved for the district judge's recusal based on these remarks, among others, and the district court denied the motion. For the reasons that follow, we **VACATE** the district court's judgment of conviction and sentence, and **REMAND** to another district judge for a new trial.

## BACKGROUND

On February 6, 2018, a federal grand jury in the Eastern District of Michigan indicted Liggins on one count of conspiracy to possess with intent to distribute and to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Previously, a federal grand jury in the Western District of Kentucky had indicted Liggins on one count of possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1). In the Kentucky case, Liggins stated he wished to plead guilty to the offense charged, and requested the case be transferred to the Eastern District of Michigan pursuant to Federal Rule of Criminal Procedure 20(a). The Western District of Kentucky district court approved Liggins' request and transferred the case to the Eastern District of Michigan for a guilty plea and sentence, where it was assigned to the same district judge as Liggins' Michigan conspiracy case. In the Eastern District of Michigan, Liggins jointly stipulated with the government for several extensions of time on the speedy trial clock to explore resolution of both the Kentucky and the Michigan cases.

On March 26, 2019, Liggins filed a pro se motion to terminate his attorney's services. The next day, Liggins' counsel moved to withdraw. After holding a hearing, the district court granted counsel's motion to withdraw. On April 30, 2019, the district court appointed Criminal Justice Act panel attorney Joseph Arnone to represent Liggins.

Based on Arnone's recent appointment and his need to become familiar with the case, the district court cancelled the June 4, 2019 trial date for the Michigan case, and set a new trial date of September 24, 2019. At the final pretrial conference on September 5, 2019, Liggins affirmed his desire to proceed to trial in the Michigan case. On September 12, 2019, the government filed a superseding indictment, which added one count of aiding and abetting possession with intent to distribute heroin, in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2. Two days later, on September 14, 2019, Liggins indicated that he intended to plead guilty. Accordingly, the district

court cancelled the trial and scheduled a change of plea hearing for September 24, 2019. However, on September 24, 2019, when Liggins appeared in court, he indicated that he no longer intended to plead guilty. The district court then set a new trial date for March 3, 2020.

On December 19, 2019, Liggins made another pro se filing indicating his dissatisfaction with Arnone, his second attorney. On January 23, 2020, Arnone moved to withdraw as counsel for Liggins. The district court set a hearing on Arnone's motion to withdraw for January 30, 2020.

At the hearing, the district judge began by stating: "[m]ost defendants don't get my attention or stand out, but Mr. Liggins does." Jan. 30, 2020 Hr'g Tr., R. 80, Page ID #393. The district judge next remarked on Liggins' inability to work with either his first attorney or Arnone, whom the district judge characterized as "two of the very finer lawyers in the district." *Id.* at Page ID #393–394. The district judge summarized the procedural history of the case, and then stated:

> I'm tired of this case. I'm tired of this defendant. I'm tired of getting the runaround. This has been going on since February 6, 2018. We've got a case out of Kentucky that came here under Rule 20. Rule 20 says the reason for the transfer was the defendant has agreed to plead guilty. I feel as if the Court has been misled. I've been told in an official pleading and informally the defendant was going to plead guilty. We cancelled jurors. We got a trial date. Now we got this.

*Id.* at Page ID #395. Liggins requested to speak, but the district court denied him permission because Liggins was represented. When Liggins responded by saying "No, I don't—I'm not represented," the district judge responded: "You are represented. And if you speak anymore, I'll have you hauled out of here." *Id*. Turning to address Arnone, the district court reiterated that he was "being misled and messed with" and then stated the following:

> This guy has got my attention, Mr. Arnone. What do you want me to do? This guy looks like a criminal to me. This is what criminals do. This isn't what innocent people, who want a fair trial do. He's indicted in Kentucky. He's indicted here. He's alleged to be dealing heroin, which addicts, hurts and kills people, and he's playing games with the Court. Do you agree?

*Id.* at Page ID #396. Arnone responded: "I can't argue with your logic." *Id.* Liggins again requested permission to speak, and the district judge again denied it. The district court granted Arnone's motion to withdraw. Additionally, the district court transferred the Kentucky case back to the Western District of Kentucky.

Following Arnone's withdrawal, Liggins was represented by a third attorney. Because of counsel's need to become familiar with the case, delays related to COVID-19, and on the parties' joint stipulations to continue the trial, the district court reset the trial date five times. Then, on March 15, 2021, Liggins' third attorney was replaced by a fourth attorney. Ultimately, the district court set trial for October 19, 2021.

The day before trial was scheduled to begin, Liggins moved for recusal of the district judge under 28 U.S.C. § 455(a) based on the district judge's remarks at the January 30, 2020 hearing. The next day, during the trial but outside the presence of the jury, the district judge addressed the recusal motion, stating that he appreciated the "opportunity to clear up a few things that ha[d] been bothering [him] for a few months." Voir Dire Tr., R. 132, Page ID #881.

The district judge denied Liggins' motion. In so ruling, the district court began by summarizing the procedural history of the case and the events that occurred at the January 30, 2020 hearing. He then asserted that Liggins had "engaged in a personal colloquy" with the court, and that this caused the district judge to become "upset." *Id.* at Page ID #1062. For this conduct, the district judge apologized to Liggins: "And I want to say right now directly to Mr. Liggins I'm sorry, I apologize for getting upset. I did that because, A, I thought we were going to have a guilty plea; B, I thought that the colloquy was getting out of hand; and C, I lost my head." *Id.* The district judge continued:

> Now, having said that, I would say two things. Number one, Mr. Brusstar[1] in that transcript agreed with my underlying concerns, and number two, just because I got mad does not mean I'm biased against Mr.—Mr. Liggins. I'm not, trust me. I give Mr. Liggins the same rights and opportunities here to demonstrate his innocence or lack of guilt as any other litigant, and I believe that my conduct at

---

[1]The district judge incorrectly identified defense counsel—at the January 30, 2020 hearing, Liggins was represented by Liggins' second attorney Arnone, not Brusstar (Liggins' third attorney).

the final pretrial conference, in ruling on the motions in limine and in today's hearing do not evidence any bias. In fact, they—they evidence lack of partiality.

*Id.* at Page ID #1062–63.

As authority for its denial of Liggins' recusal motion, the district court relied on *Liteky v. United States*, 510 U.S. 540 (1994). In describing his conduct, the district judge stated:

> I was mad, I was hostile, I was disapproving, and I regret it. I made a mistake by yelling like that, but I wasn't upset or concluding that Mr. Liggins was—was guilty of an offense or hostile or partial toward him. I concluded he was acting in a manner which was frankly obstructionist and making me mad.

Voir Dire Tr., R. 132, Page ID #1063. Nonetheless, the district judge concluded that, under the standard established in *Liteky*, he was unbiased and declined to recuse himself. The district judge also noted that, in his view, Liggins' motion was untimely and it would be inappropriate to grant the motion given the need for "fair and efficient administrative adjudication of" Liggins' case. *Id.* at Page ID #1064. Finally, the district judge assured Liggins that he would "act in an impartial and fair manner going forward." *Id.* at Page ID #1065.

After the district judge denied Liggins' motion for recusal, the trial proceeded. The jury convicted Liggins on both counts. Liggins moved for a new trial under Federal Rule of Criminal Procedure 33, and the district court denied that motion. Subsequently, the district court sentenced Liggins to 127 months' imprisonment. Liggins timely appealed.

## DISCUSSION

On appeal, Liggins challenges the district court's denial of his motion for recusal and argues that he is entitled to a new trial before another district judge because the district judge's remarks evinced bias or prejudice against him. We review a district court's denial of a motion for recusal for an abuse of discretion. *Burley v. Gagacki*, 834 F.3d 606, 616 (6th Cir. 2016). Based on the district judge's inappropriate remarks at the January 30, 2020 hearing, we conclude that the district judge should have recused himself from Liggins' case, and therefore abused his discretion by denying Liggins' recusal motion.

**I.**

The Due Process Clause of the Fifth Amendment requires a "fair trial in a fair tribunal before a judge with no actual bias against the defendant." *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997) (internal quotation marks and citations omitted); *see In re Murchison*, 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process."). Under the Due Process Clause, "recusal is required when, objectively speaking, 'the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.'" *Rippo v. Baker*, 580 U.S. 285, 287 (2017) (per curiam) (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). We ask "not whether a judge harbors an actual, subjective bias, but instead whether, as an objective matter, the average judge in his position is likely to be neutral, or whether there is an unconstitutional potential for bias." *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016) (internal quotation marks omitted) (quoting *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 881 (2009)). Because "[b]oth the appearance and reality of impartial justice are necessary to the public legitimacy of judicial pronouncements and thus to the rule of law itself," an unconstitutional failure to recuse is structural error and thus not amenable to harmless-error review. *Id.* at 16.

However, "[t]he Due Process Clause demarks only the outer boundaries of judicial disqualifications." *Caperton*, 556 U.S. at 889. Recusal "questions are, in most cases, answered by common law, statute, or the professional standards of the bench and bar." *Bracy*, 520 U.S. at 904. In this case, Liggins moved for the district judge's recusal pursuant to the federal recusal statute 28 U.S.C. § 455. Accordingly, we must consider whether the district court abused its discretion in denying Liggins' motion pursuant to the law governing judicial recusal under § 455.

Under subsection 455(a), all "judge[s] of the United States" must "disqualify [themselves] in any proceeding in which [their] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Subsection 455(b), in contrast to subsection 455(a)'s general dictate, enumerates specific instances requiring recusal, the first of which is relevant here: judges must recuse themselves when they have "a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." *Id.* § 455(b)(1).

The leading case from the Supreme Court on recusal under § 455 is *Liteky*. Under *Liteky*, the terms "bias or prejudice" connote instances of partiality or opinions that are "somehow *wrongful* or *inappropriate*." 510 U.S. at 550–52. A judge's misconduct at trial may be "characterized as bias or prejudice" if "it is so extreme as to display clear inability to render fair judgment." *Id.* at 551 (internal quotation marks omitted). This conduct must be so extreme, in other words, that it "display[s] a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* at 555. "[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases ordinarily do not support a bias or partiality challenge. . . . [But] they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id.* (emphasis omitted). "[E]xpressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display," by contrast, do not establish such bias or partiality. *Id.* at 555-56; *see also Offutt v. United States*, 348 U.S. 11, 17 (1954).

In *Liteky*, as an example of a case in which recusal was warranted because the judge's remarks made "fair judgment impossible," the Supreme Court cited *Berger v. United States*, 255 U.S. 22 (1921). 510 U.S. at 555. In *Berger*, a World War I espionage case involving German-American defendants, the Supreme Court concluded that a district judge was impermissibly biased when he stated: "One must have a very judicial mind, indeed, not to be prejudiced against the German-Americans in this country. Their hearts are reeking with disloyalty." 255 U.S. at 28. Immediately thereafter, the judge stated: "This defendant is the kind of a man that spreads this kind of propaganda, and it has been spread until it has affected practically all the Germans in this country." *Id.* at 28–29. According to the Supreme Court, these comments were sufficiently extreme to establish "such a high degree of . . . antagonism as to make fair judgment impossible." *Liteky*, 510 U.S. at 555.

## II.

Difficult as the recusal standard may be to reach, we find that the district judge's unacceptable remarks at the January 30, 2020 hearing satisfy it. Among the many disparaging remarks about Liggins that the district judge made, the most troubling is that Liggins "looks like a criminal to me." Jan. 30, 2020 Hr'g Tr., R. 80, Page ID #396. We are highly concerned by

this remark, especially when directed toward Liggins, an African American man.  Even if one were to assume a lack of racial bias on the part of the district judge, the remark nevertheless raises the specter of such bias.  "Discrimination on the basis of race, odious in all aspects, is especially pernicious in the administration of justice."  *Rose v. Mitchell*, 443 U.S. 545, 555 (1979).

The government assures us that this remark referred only to Liggins' conduct, and not his appearance.  But this Court cannot decide what the district judge meant by his remark.  Rather, we review only the remark that the district judge made.  And regardless of the district judge's intended meaning, we must consider the interpretation that a reasonable observer of this public hearing could have made, for we must guard against not only actual bias but also the appearance of bias, which "demeans the reputation and integrity" of the court of which the district judge is a part.  *Williams*, 579 U.S. at 15.  Given the district judge's remark that Liggins "look[ed] like a criminal to [him]," a reasonable observer could have interpreted the remark to indicate a prejudgment of Liggins' guilt based on Liggins' physical appearance.  *See Berger*, 255 U.S. at 28 (prejudging the defendants' guilt based on their German-American identity).

Beyond this remark, the district judge's other remarks could be understood to demonstrate clear prejudgment of Liggins' guilt.  For instance, the district judge stated that Liggins was doing "what criminals do."  Jan. 30, 2020 Hr'g Tr., R. 80, Page ID #396.  Moreover, he made it clear to defense counsel that "[m]ost defendants don't get my attention or stand out, but Mr. Liggins does" and told him "I'm tired of this case.  I'm tired of this defendant."  *Id.* at Page ID #393 & 395.  These remarks served no purpose for courtroom administration, but rather constituted gratuitous commentary by the district judge about his opinion of Liggins and his feelings about Liggins' case.  *Cf. Liteky*, 510 U.S. at 556.  And because these remarks suggest prejudgment of guilt, they go beyond mere "expressions of impatience, dissatisfaction, annoyance, [or] anger."  *Id.* at 555–56.

The government concedes that the district judge should not have "lost his temper," but argues that the court's frustration was "understandable" based on Liggins' conduct during pretrial proceedings.  Appellee's Br. at 24–25.  To the contrary, we do not find the district judge's conduct understandable in the least.  The complexity or long duration of a criminal case

gives no license to a district court to prejudge the defendant's guilt or otherwise dispose of the case in any manner except through fair proceedings.  And if Liggins was more persistent than most defendants in pursuing his constitutional right to proceed to a jury trial on the merits, the district judge had ample means available to him to rule on any issues Liggins raised and to keep the proceedings on track.

It is noteworthy that the district judge twice denied Liggins the opportunity to speak for himself.  The government is correct that district courts may require represented defendants to communicate through counsel.  *See United States v. Cromer*, 389 F.3d 662, 681 n.12 (6th Cir. 2004) ("It is well settled that there is no constitutional right to hybrid representation."). However, the district court held this hearing on the motion of Liggins' attorney to withdraw based on a breakdown of his attorney-client relationship with Liggins.  While Liggins was technically represented at the time of the hearing because the district court had not yet granted Arnone's motion to withdraw, the district court was well aware that, in Liggins' view, Arnone was not providing effective representation.  In his motion to withdraw, Arnone informed the court that Liggins had requested to fire him on several occasions.  Additionally, Liggins had made a pro se filing purporting to give the court notice of the ineffective assistance of his counsel and reporting a lack of communication from Arnone.  In such a proceeding, where the district court is tasked with considering a defendant's request for new counsel, and determining whether it is necessary and appropriate to release the present defense counsel from his obligation of representing the defendant, the district court should hear from the defendant.  In this case, Liggins twice attempted to speak, and the district court refused both times, telling Liggins that if Liggins spoke anymore, he would have him "hauled out of here."  Jan. 30, 2020 Hr'g Tr., R. 80, Page ID #395.  The district court abused its discretion by denying Liggins permission to speak when he asked and by failing to provide any other time during the hearing for Liggins to be heard.

The district judge's apology at the start of Liggins' trial in October 2021 did not adequately resolve the problem—given that Liggins' trial commenced nearly two years after the January 30, 2020 hearing at which the district judge had disparaged Liggins.  During those two years, Liggins had been represented by two additional attorneys and his trial date had been reset

five times by the district court. Throughout the court proceedings over that time period, Liggins was most probably litigating under the impression that his case was being presided over by a judge who had, for all intents and purposes, sided against him and expressed open hostility toward him.

When the district judge finally addressed the situation on October 19, 2021, the district judge stated that he appreciated the "opportunity to clear up a few things that ha[d] been bothering [him] for a few months." Voir Dire Tr., R. 132, Page ID #881. However, the district court did not need to wait for Liggins' recusal motion to address this situation. The district court had been in regular contact with the parties for pretrial proceedings, during which the court could have addressed his prior remarks. The government attempts to blame Liggins for the delay between the district judge's remarks and the district court's consideration of recusal. However, the district court could have acted *sua sponte* to address the issue of recusal, or at least to convene a hearing to discuss with the parties the need for recusal. The district court also relied in part on the delay in denying the motion, as it noted that granting the motion would not serve the "fair and efficient administrative adjudication of" Liggins' case. *Id.* at Page ID #1064. However, we find the responsibility for this delay lies with the district court, especially given Liggins' clear difficulty in communicating with his counsel.

In denying Liggins' recusal motion, the district judge assured Liggins that he would act in a fair and impartial manner going forward, and Liggins alleges no instances of bias or improper conduct by the district judge during the trial or sentencing proceedings. Nonetheless, in considering the denial of a motion for recusal pursuant to 28 U.S.C. § 455, we do not look to whether the district court made a sufficiently curative apology to the defendant in ruling on the motion; rather, we consider whether recusal was warranted at the time that the defendant made the motion.[2] We determine that the district court abused its discretion in denying Liggins' recusal motion because the district judge's remarks at the hearing on January 30, 2020, demonstrated "a deep-seated . . . antagonism that would make fair judgment impossible," *Liteky*,

---

[2]Liggins relies in part on the district judge's comment during his ruling that he would "give Mr. Liggins the same rights and opportunities here to demonstrate his innocence or lack of guilt as any other litigant." Voir Dire Tr., R. 132, Page ID #1062–63. This comment misstates the legal standard for the burden of proof and bolsters Liggins' position.

510 U.S. at 555, and therefore required recusal under 28 U.S.C. § 455.  In this case, the risk of undermining the public's confidence in the judicial process is significant.  Permitting Liggins' judgment of conviction and sentence to remain in spite of the fact that § 455 warranted the district judge's disqualification would substantially undermine the public's confidence in the judicial process.  Therefore, we vacate Liggins' judgment of conviction and sentence and remand for a new trial.  On appeal, Liggins also challenged some of the district court's evidentiary rulings at trial.  Because we remand for a new trial, we need not consider these evidentiary issues.

## CONCLUSION

Instead of maintaining the decorum essential to the administration of justice, the district judge permitted himself to make personal and condemnatory remarks about the criminal defendant before him.  Such remarks are wholly incompatible with the fair administration of justice.  *See Offutt*, 348 U.S. at 17.  Accordingly, we **VACATE** the district court's judgment of conviction and sentence, and **REMAND** for a new trial.

Because we have determined that the district judge's remarks in Liggins' case "make fair judgment impossible," *Liteky*, 510 U.S. at 555, we order that this case be reassigned to another district judge on remand, pursuant to 28 U.S.C. § 2106.