RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0277p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

DEREK DUANE RILEY,

*Defendant-Appellant*.

No. 24-1287

─────────────

Appeal from the United States District Court for the Eastern District of Michigan at Bay City.
No. 1:16-cr-20677-2—Thomas L. Ludington, District Judge.

Argued: June 12, 2025

Decided and Filed: October 9, 2025

Before: CLAY, KETHLEDGE, and STRANCH, Circuit Judges.

─────────────

**COUNSEL**

─────────────

**ARGUED:** J. Scott Ballenger, Abby Jones, Leah F. Schwartz, UNIVERSITY OF VIRGINIA, Charlottesville, Virginia, for Appellant. William J. Vailliencourt, Jr., UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee. **ON BRIEF:** J. Scott Ballenger, Abby Jones, Leah F. Schwartz, UNIVERSITY OF VIRGINIA, Charlottesville, Virginia, for Appellant. William J. Vailliencourt, Jr., UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

─────────────

**OPINION**

─────────────

JANE B. STRANCH, Circuit Judge. Derek Riley was eligible for resentencing under Amendment 821 to the Sentencing Guidelines. His counsel and the Government stipulated to a

recommended sentence, and the district court imposed that sentence. Riley then filed a motion for reconsideration, asserting that he was proceeding pro se in order to make clear that his counsel had agreed to the stipulation without his knowledge and against his wishes, and that a lower sentence was warranted. The district court denied the motion without reaching the merits on the basis that it had not been filed through counsel and therefore constituted improper hybrid representation. For the reasons that follow, we **VACATE** the district court's judgment on Riley's motion for reconsideration and **REMAND** for further proceedings.

## I. BACKGROUND

In 2016, Riley pled guilty to one count of conspiracy to possess with intent to distribute controlled substances under 21 U.S.C. § 841 and § 846. At the time, his offense level was 31 and his criminal history category was III based on five criminal history points, producing a sentencing guideline range of 135 to 168 months. The district court sentenced him to 160 months. In 2023, however, Amendment 821 to the Sentencing Guidelines retroactively lowered criminal history status points for certain classes of prior offenses. U.S. Sent'g Guidelines Manual App. C Supp., Amend. 821 (Nov. 1, 2023). Under the amended guideline, Riley had three criminal history status points, putting him in category II and placing his new guideline range at 121 to 151 months. Riley requested and received a public defender to represent him in resentencing proceedings. On February 5, 2024, the Government and Riley's counsel entered a stipulation in which the parties agreed Riley was eligible for resentencing and jointly recommended a sentence of 144 months. The next day, February 6, the district court followed the parties' recommendation and resentenced Riley to a term of incarceration of 144 months.

On March 5, 2024, Riley filed a document styled "Motion for Reconsideration" in which he purported to appear "in his pro-se litigant capacity." R. 930, Motion, PageID 7321. He stated that his attorney had agreed to the stipulation as to his sentence without his knowledge or consent and that, therefore, the district court should reconsider his sentence and take into account the arguments he wanted to make in favor of a lower sentence. Riley argued that the court should impose a sentence of time served. The district court denied this motion on the grounds that Riley was represented by counsel and his attempt to file a pro se motion constituted improper "hybrid"

representation.  The court instructed that, if Riley wanted to file a motion for reconsideration, he needed to file it through his court appointed counsel.  Riley filed a pro se notice of appeal.

## II.  ANALYSIS

### A.  Inquiry into Breakdown of Attorney-Client Relationship

The Sixth Amendment to the United States Constitution guarantees each defendant the right to the assistance of counsel for his defense.  U.S. Const. amend. VI.  But inherent in that right is also the right to decline the assistance of counsel.  *See Faretta v. California*, 422 U.S. 806, 836 (1975); *United States v. Conder*, 423 F.2d 904, 908 (6th Cir. 1970) ("The right to defend pro se and the right to counsel have been aptly described as 'two faces of the same coin,' . . . in that the waiver of one right constitutes a correlative assertion of the other." (quoting *United States v. Plattner*, 330 F.2d 271, 276 (2d Cir. 1964))).  A court may not compel a defendant to accept a lawyer he does not want.  *See Faretta*, 422 U.S. at 833.  And a defendant has the right to conduct his own defense.  *See id.* at 836.

In general, it is counsel's and not the district court's responsibility to ensure that plea offers and the like are communicated to the defendant and that the defendant is permitted to direct the overarching defense strategy.  *See Missouri v. Frye*, 566 U.S. 134, 144–45 (2012).  Thus, while district courts are well advised to ensure that such communication is occurring in order to prevent future claims of ineffective assistance of counsel, there is no constitutional right to such monitoring by the district court and no constitutional right for the district court to identify and prevent ineffective assistance.

When a breakdown in the attorney-client relationship occurs such that the defendant's wishes are no longer being followed, however, a defendant may move for existing counsel to be replaced or to proceed pro se, which triggers responsibility on the part of the district court.  *United States v. Iles*, 906 F.2d 1122, 1130–31 (6th Cir. 1990).  Indeed, an indigent defendant's timely and good faith motion that counsel be discharged and the defendant permitted to proceed pro se, or have new counsel appointed, places on the district court a responsibility to inquire into the reasons for, and nature of, the defendant's dissatisfaction with counsel and to replace or dismiss counsel if necessary.  *See id.*  In other words, the defendant must "show his hand" and

express to the court that there is a problem, but once he does, the district court must respond. *Id.* at 1131 (quoting *Brown v. United States*, 264 F.2d 363, 366 (D.C. Cir. 1959)).

The parties in this case disagree as to whether Riley appropriately put the district court on notice that he was dissatisfied with his counsel and wanted a change. In examining Riley's motion to reconsider, the district court was required to look not only for specific magic words explicitly requesting appointment of new counsel, dismissing his counsel, or asserting dissatisfaction. *See Benitez v. United States*, 521 F.3d 625, 634 (6th Cir. 2008). Indeed, as with any pro se filing, the court was required to examine the "thrust" of Riley's argument, rather than attempting to rigidly construe the text of Riley's motion. *Burton v. Jones*, 321 F.3d 569, 573–74 (6th Cir. 2003), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007) (quoting *Huey v. Stine*, 230 F.3d 226, 229 (6th Cir. 2000)). Our circuit has held that a defendant is not required to make an explicit request in order to make known his dissatisfaction with his representation and his desire to proceed pro se or to have new counsel appointed. *Benitez*, 521 F.3d at 634 ("His failure to explicitly request a new attorney does not negate the conclusion that his statements were sufficient to trigger the district court's obligation to inquire into his dissatisfaction with [counsel]."). Other expressions of dissatisfaction, such as suggestions that the defendant wishes to conduct his own defense, may suffice. *See Iles*, 906 F.2d at 1131. The court must evaluate whether the defendant has made "a motion, or something that approximates such a motion" to effect a change in representation. *Benitez*, 521 F.3d at 634 (quoting *Iles*, 906 F.2d at 1131 n.8).

Not every motion noting a disagreement about strategy between counsel and the defendant rises to the necessary level. Defendants routinely seek to file pro se motions that their counsel decline to file for one reason or another. *See e.g.*, *United States v. Flowers*, 428 F. App'x 526, 527–28 (6th Cir. 2011); *United States v. Lathan*, No. 21-4177, 2023 WL 2523299, at *3–4 (6th Cir. Mar. 15, 2023) (unpublished opinion). And we have routinely approved district court decisions to deny those motions on grounds of hybrid representation without conducting further inquiry into whether a change of representation is needed. *Flowers*, 428 F. App'x at 530; *Lathan*, 2023 WL 2523299, at *9. Indeed, we follow the same procedure where defendants seek to file pro se motions in our court while represented by counsel. *United States v. Williams*, 641

F.3d 758, 770 (6th Cir. 2011) (striking pro se arguments from a represented defendant); *United States v. Martinez*, 588 F.3d 301, 328 (6th Cir. 2009) (declining to consider a pro se motion to reconsider from a represented defendant).

This makes sense. There are many matters committed to the discretion of an attorney, and an attorney is not required to consult with or obtain the defendant's approval for "every tactical decision." *Florida v. Nixon*, 543 U.S. 175, 187 (2004) (quoting *Taylor v. Illinois*, 484 U.S. 400, 418 (1988)). Barring "the exceptional cases in which counsel is ineffective, the client must accept the consequences" of the lawyer's tactical decisions, including the decision not to act in certain cases. *Taylor*, 484 U.S. at 418. Thus, the fact that a client disagrees with counsel's decision not to pursue a certain argument or motion does not, in and of itself, demonstrate that the relationship has deteriorated beyond the ordinary bounds of attorney-client representation. Nor will a defendant's non-specific, "general statements of dissatisfaction with counsel," standing alone, evince such a deterioration. *See Iles,* 906 F.2d at 1131 (quoting *Moreno v. Estelle*, 717 F.2d 171, 175 (5th Cir. 1983)). Absent more evidence of a breakdown, such circumstances generally do not automatically trigger the district court's obligation to inquire into whether the defendant desires and is entitled to a change in representation. *See United States v. Durachinsky*, No. 23-4019, 2025 WL 1833941, at *6 (6th Cir. Apr. 2, 2025) (unpublished order) (reasoning that a defendant taking a position different from his attorney did not automatically justify appointing new counsel when the matter was one committed to counsel's independent strategic decision making); *see also Moreno,* 717 F.2d at 175 n.6 ("Where, as here, the defendant refers to no particular instances of disagreement over the presentation of his defense, but only expresses a general dissatisfaction with counsel, we cannot find the absence of further inquiry by the trial court to be error.").

But cases like this one present a materially different landscape. Here, the court was not simply presented with a disagreement over strategic choices made at the discretion of the attorney nor an instance of nonspecific dissatisfaction. Instead, the court was faced with the defendant's specific allegation that his counsel made a decision affecting the overarching aims of the representation without his knowledge or assent. A defendant must be permitted to make important decisions as to the direction of his case regardless of whether he is represented. *See*

*Nixon*, 543 U.S. at 187.  A lawyer may not override a defendant's decision to accept or reject a plea offer or disposition offered by the government because "decisions regarding the exercise or waiver of basic trial rights are of such moment that they cannot be made for the defendant by a surrogate."  *See id.*  Nor may counsel fail to communicate with her client about such offers or potential dispositions.  *See Frye*, 566 U.S. at 145.  The failure to communicate such matters or to adhere to the defendant's wishes in them evidences a clear violation of the defendant's rights and an ethical violation on the part of the attorney.  *See Nixon*, 543 U.S. at 187; Model Rules of Pro. Conduct r. 1.2(a) (A.B.A. 1983).  Where a defendant alleges conduct that amounts to such a violation, his allegations, if true, point to a breakdown in proper representation.  His dissatisfaction and disagreement with his counsel should, therefore, be an apparent and pressing concern, triggering the district court's obligation to investigate.  *See Moreno*, 717 F.2d at 175 n.6 (noting that the district court should inquire into the defendant's desire to replace counsel where the defendant "can state particular instances of disagreement between him and his counsel" as to defense strategy).

Riley began his motion by asserting that he was acting "in his pro-se litigant capacity." R. 930, PageID 7322.  He then alleged that his counsel had, "unbeknownst to [him]," agreed to a stipulated sentence without his "agreeing" to the stipulation.  *Id.* at 7322–23.  The clear thrust of the motion was that Riley wanted to proceed pro se because his counsel had agreed to a specific disposition of his § 3582 motion (a revised sentence of 144 months) without his consent.  The district court then had an obligation to address that allegation directly in deciding Riley's pro se motion.

The Government resists this conclusion, arguing that when the district court denied Riley's motion, the court did not know whether there had been a breakdown of communication between counsel and Riley and did not know whether counsel was deliberately disregarding Riley's wishes.  The Government points out that Riley's assertion that he had not been consulted before the stipulation was made could have other explanations: counsel having discussed the matter with Riley and Riley not remembering; Riley misunderstanding something his counsel had told him, or vice versa; counsel's mistaken belief that she had consulted Riley when she had, in fact, failed to; or Riley simply lying.  The Government argues that, absent evidence that there

was, in fact, a breakdown, the district court acted appropriately in instructing Riley to speak to his attorney and have his attorney raise the issue to the court before considering the matter itself.

But that is not the law. The law does not require a defendant to prove that there has been a breakdown in the attorney-client relationship before the court even begins an inquiry; nor does the law require counsel's admission to that effect before the district court begins its inquiry. *United States v. Powell*, 847 F.3d 760, 778 (6th Cir. 2017) ("Once a defendant brings 'any serious dissatisfaction with counsel to the attention of the district court,' the court has an obligation to inquire into the source and nature of the dissatisfaction . . . ." (quoting *Benitez*, 521 F.3d at 632)). That, after all, is what the inquiry is for: determining whether a breakdown has occurred and, if so, what remedy is appropriate. Once Riley put the court on notice of his serious dissatisfaction and disagreement with his counsel, the court's role was to determine whether the attorney-client relationship had in fact fractured, and, if so, what further action was necessary.

## B. Hybrid Representation

Riley concedes that aspects of his pro se motion—the arguments on the merits of his sentencing—standing alone, would amount to hybrid representation. But Riley's motion also raised an antecedent issue about his Sixth Amendment right to self-representation: whether his attorney had entered a stipulation on his behalf, without his consent. And the motion did not amount to hybrid representation to the extent it raised that antecedent issue.

In *United States v. Liggins*, we considered whether a defendant's expressions of dissatisfaction with his representation constituted improper hybrid representation and could be rejected on those grounds. 76 F.4th 500, 507–08 (6th Cir. 2023). Liggins became dissatisfied with his appointed counsel and made a pro se filing to that effect. *Id.* at 503. The district court held a hearing to determine whether counsel should be replaced. *Id.* At that hearing, Liggins attempted to speak, and the court denied him permission because he was represented. *Id.* On appeal, the Government attempted to justify the district court's actions on grounds that "district courts may require represented defendants to communicate through counsel" and may reject hybrid representation. *Id.* at 507. We held:

> [T]he district court held this hearing on the motion of Liggins' attorney to withdraw based on a breakdown of his attorney-client relationship with Liggins. While Liggins was technically represented at the time of the hearing because the district court had not yet granted [counsel]'s motion to withdraw, the district court was well aware that, in Liggins' view, [counsel] was not providing effective representation. In his motion to withdraw, [counsel] informed the court that Liggins had requested to fire him on several occasions. Additionally, Liggins had made a pro se filing purporting to give the court notice of the ineffective assistance of his counsel and reporting a lack of communication from [counsel]. In such a proceeding, where the district court is tasked with considering a defendant's request for new counsel, and determining whether it is necessary and appropriate to release the present defense counsel from his obligation of representing the defendant, the district court should hear from the defendant. . . . The district court abused its discretion by denying Liggins permission to speak when he asked and by failing to provide any other time during the hearing for Liggins to be heard.

*Id.* at 507–08. A defendant's assertions that he is dissatisfied with his counsel or is not properly represented, and his explanations for such assertions, do not constitute hybrid representation.

Basic logic compels this conclusion. Suppose a defendant's request for new counsel, if filed pro se, constituted improper hybrid representation. The only way for the defendant to alert the court of his dissatisfaction with his counsel would be through the very counsel with whom he is dissatisfied. A defendant whose counsel was not honoring the defendant's requests—as Riley asserts in this case—would have no means of alerting the court that he wanted to dismiss his counsel. To effectuate our holding in *Iles*—that a district court must act on an indigent defendant's timely and good faith assertion that counsel be discharged—the defendant must have a means of notifying the court that he is dissatisfied with counsel, even if counsel refuses to be the vehicle for communicating that dissatisfaction. *See Iles*, 906 F.2d at 1130–31.

Riley's filed motion was not improper hybrid representation; it was a defendant's proper assertion of dissatisfaction with his representation. The district court erred in denying Riley's motion as hybrid representation before conducting the appropriate inquiry into whether Riley was entitled to a change in representation.

## III.  CONCLUSION

For the foregoing reasons, we **VACATE** the district court's judgment on Riley's motion for reconsideration.  We **REMAND** for the district court to conduct the proper inquiry into whether Riley wishes to dismiss his counsel and whether he is entitled to do so.  As is appropriate based on the outcome of that inquiry, the court should proceed to the remainder of Riley's motion, including his argument that the sentence imposed is improper.