NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0552n.06

Case No. 24-5823

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td></td><td>)</td><td rowspan="2"><strong>FILED</strong><br>Dec 02, 2025<br>KELLY L. STEPHENS, Clerk</td></tr>
<tr><td>SEAN MURPHY; DENISE PAGELS, et al.,</td><td>)</td></tr>
<tr><td>    Plaintiffs-Appellants,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>v.</td><td>)</td><td>ON APPEAL FROM THE UNITED</td></tr>
<tr><td></td><td>)</td><td>STATES DISTRICT COURT FOR</td></tr>
<tr><td></td><td>)</td><td>THE EASTERN DISTRICT OF</td></tr>
<tr><td>BRIXWORTH HOMEOWNERS</td><td>)</td><td>TENNESSEE</td></tr>
<tr><td>ASSOCIATION, INC.,</td><td>)</td><td></td></tr>
<tr><td>    Defendant-Appellee.</td><td>)</td><td>OPINION</td></tr>
</table>

Before: SUTTON, Chief Judge; MURPHY and BLOOMEKATZ, Circuit Judges.

SUTTON, Chief Judge. Unhappy with a request from his homeowners association to take down large political banners in his front yard, Sean Murphy filed a lawsuit in Tennessee court. The association removed the case to federal court, and Murphy sought to recuse the judge responsible for the case. The district court accepted the case and refused to recuse. Because Murphy included federal claims in his complaint and because the district court judge did not err in hearing the case, we affirm.

I.

After Murphy moved to Farragut, Tennessee, he suspected corruption in local government. He founded a political group, a podcast, and a publication to press his concerns. He also used yard signs to convey his political convictions, placing "political yard art" in his front lawn with images that parodied local politicians and took stands on local political issues. R.1-2 at 6. One large

banner, as an example, depicted Farragut's mayor in an orange jumpsuit under the words "for prison 2023." R.40 at 2; R.1-2 at 2–6.

Murphy's neighborhood did not appreciate these banners. The Brixworth Homeowners Association's covenant prohibits most yard signs, including these ones, and it told Murphy as much. Murphy refused to remove the banners. In June 2023, the Association banned Murphy and his political group from the Association's amenities, pool, and common spaces until he complied with its request.

Murphy sued the Association's president instead. He filed his first lawsuit in the federal court for the Eastern District of Tennessee, bringing claims related to his yard signs and loss of common-space privileges. *See* Complaint at 1–2, 4–5, 7–9, 71, *Murphy v. Town of Farragut*, 3:23-cv-00402 (E.D. Tenn. Nov. 8, 2023). Chief Judge McDonough presided over the case, which he eventually dismissed. *See* Order Granting Motion to Dismiss, *Murphy*, 3:23-cv-00402 (E.D. Tenn. Apr. 15, 2024).

Murphy, joined by his wife and children, separately sued the Association in Tennessee state court on September 28, 2023. His complaint alleged that the Association breached a contract and owed him $150,000 in damages under the Fair Housing Act and the Americans with Disabilities Act. The Association removed the lawsuit to the U.S. District Court for the Eastern District of Tennessee in February 2024 because Murphy's complaint included claims under federal law.

Treating this second lawsuit as related to the first one, Chief Judge McDonough decided to handle it. *See* E.D. Tenn. Local R. 3.2; 28 U.S.C. § 137. Murphy responded by moving to recuse Chief Judge McDonough, arguing that his handling of the first lawsuit and his prior work for the City of Chattanooga as an attorney made him biased against Murphy. Murphy separately moved

to remand the case to Tennessee courts on the ground that his complaint did not include any federal claims. The Association, for its part, moved for judgment on the pleadings, arguing that Murphy failed to state a viable claim. The district court granted the Association's motion for judgment on the pleadings and denied Murphy's motions.

## II.

On appeal, Murphy claims that the district court—and, in one respect, this court—erred at several turns: The district court should have remanded the case to state court; Chief Judge McDonough should not have reassigned the case to himself; Chief Judge McDonough should have recused himself; and the Clerk of the Sixth Circuit lacked authority to enter scheduling orders in the appeal. Murphy also moves to supplement the record on appeal and asks for the appointment of a special master to sort through his supplemental allegations.

*Removal.* Murphy contends that the district court never had authority to hear this lawsuit because it involved only state-law claims, and it should have sent the case back to the Tennessee court where he filed it. He also argues that the Association did not follow the right procedure for removing a lawsuit to federal court because it waited too long and failed to include the requisite documents.

Federal courts may hear "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331; *see* U.S. Const. art. III, § 2, cl. 1. That means a federal court has authority over a case if the complaint seeks relief under federal law. *See Smolarek v. Chrysler Corp.*, 879 F.2d 1326, 1329 (6th Cir. 1989) (en banc). Federal courts may also hear state-law claims brought alongside federal ones that "form part of the same case or controversy." *Davet v. City of Cleveland*, 456 F.3d 549, 553 (6th Cir. 2006) (quoting 28 U.S.C. § 1367(a)).

When a plaintiff files a complaint in state court that includes federal-question claims or diverse parties, the defendant may remove the lawsuit to federal court within 30 days of learning about it. 28 U.S.C. § 1446(b)(1). If a plaintiff believes that the defendant improperly removed his lawsuit to federal court "on the basis of any defect other than lack of subject matter jurisdiction," he must request within 30 days that the district court remand the lawsuit to state court. *Id.* § 1447(c).

The district court correctly heard Murphy's lawsuit because his complaint included claims under federal law. He sued the Association for violations of two federal statutes: the Fair Housing Act and the Americans with Disabilities Act. As one pertinent example, he alleged that he "is a member of a protected class under the Fair Housing Act," and that the Association acted "in violation of the FHA" by warning him that he would lose access to the neighborhood's amenities if he continued to violate the no-sign rule. R.1-2 at 12. To leave no doubt, he demanded $150,000 in damages for the Association's alleged "violation of the requirements of the FHA/ADA." R.1-2 at 16. The district court thus had authority to hear these federal-question claims and had supplemental jurisdiction over his related breach-of-contract claim under state law. *See* 28 U.S.C. §§ 1331, 1367(a).

Murphy insists that he "asserted a single cause of action: breach of contract." Reply Br. 6. But his complaint contradicts that assertion. He accused the Association of violating two federal laws and asked for money damages under both laws to boot. Murphy appeared to agree with this reading of his complaint at an earlier point in the litigation. In one of his briefs in support of his request to return the case to state court, he referred to his "ADA claims" and claims "brought under the FHA." *See* R.37 at 1–3.

That "[s]tate courts have general jurisdiction" over federal claims makes no difference. Appellants' Br. 7. State courts of general jurisdiction, to be sure, have authority to hear these federal claims. But that does not tell us whether federal courts may hear the claims as well. Congress has told us the answer: When a defendant timely asks to remove a lawsuit raising federal claims from state court to federal court, we must honor the request. *See* 28 U.S.C. § 1446.

Murphy separately argues that the district court improperly "amend[ed]" his complaint through the "sua sponte addition of arguments and claims," such as "a First Amendment claim." Appellants' Br. 14. The district court, it is true, interpreted his complaint as including a federal free-speech claim. Accurate or not, this construction of Murphy's "unfocused" complaint, R.40 at 11 n.3, makes no difference to our disposition of the appeal. Either way, the Fair Housing and Americans with Disabilities Act claims independently provided a basis for federal jurisdiction.

Murphy moves to supplement the record with a copy of the coversheet that the Association submitted when it removed the case to federal court. The Association initially filed the coversheet in an incorrect file format, and the clerk of the district court directed it to refile the document as a "flattened" PDF file so that all of its content would be preserved when the Association uploaded it to the court's electronic filing system. *See* R.1-2; R.6. Murphy seeks to add to the appellate record what he claims is a copy of the original coversheet the Association filed in the wrong format. To avoid any doubt that we have considered Murphy's arguments, we will grant the motion. The additional copy of the coversheet makes no difference, however, to our disposition of the case. Coversheets do not control subject matter jurisdiction; complaints do. *See Smolarek*, 879 F.2d at 1329. Murphy's complaint established federal jurisdiction. In view of this conclusion, we need not appoint a special master to sort through these other immaterial matters.

Murphy also objects to the procedures the Association used to remove the case. He claims that it brought the lawsuit to federal court too late and failed to include the required documents when filing it. The Association responds that it did not receive notice of Murphy's lawsuit for months and it removed the case to federal court within the 30-day time period that began ticking when the Association first learned of the lawsuit. *See* 28 U.S.C. § 1446(b)(1). We have few data points in the record to sort through these competing claims. But they make no difference. The arguments all fail for the same reason: Murphy never brought them to the district court's attention. Murphy did not file a motion for remand within the 30-day window for raising procedural defects. *See id.* § 1447(c). Even the motion Murphy later filed argued only that the court "lacks subject jurisdiction." R.31 at 1; *see also id.* at 5. He did not discuss his concerns about timeliness or omitted documents, and as a result abandoned any argument based on them. *See* 28 U.S.C. § 1447.

*Reassignment.* Murphy argues that Chief Judge McDonough erred by reassigning this case to himself. The local rules of each district court determine how the judges of that court divide up their cases. *See id.* § 137(a). The Eastern District of Tennessee's local rules allow the chief judge to reassign "related cases" to the same judge. E.D. Tenn. Local R. 3.2(d)(3). Cases are related when, among other reasons, they "arise[] out of the same transaction or occurrence and involve[] one or more of the same parties as an earlier numbered case." *Id.*

This case fits that description to a tee. Because Murphy filed both lawsuits, they shared a party. The claims in the earlier lawsuit related to his political yard signs and the Association's common-space ban. The defendants in the earlier lawsuit included the Association's president, a mainstay of his complaint in this case. The local rules and federal law thus empowered Chief Judge McDonough to reassign the case to himself as a more efficient way to handle this related case. *See* E.D. Tenn. Local R. 3.2(d)(3); 28 U.S.C. § 137(a).

Even so, Murphy adds, Chief Judge McDonough procedurally erred in how he reassigned the case. He insists that the local rules allowed only the clerk and magistrate judge to identify and reassign related cases. But he misreads the rules. In addition to permitting reassignment by the clerk and magistrate judge, the rules provide that, "[i]f cases are found to be related cases after assignment to different judges, they may be reassigned by the Chief Judge to the judge having the related case earliest filed." E.D. Tenn. Local R. 3.2(d)(3)(B).

*Recusal.* Murphy claims that Chief Judge McDonough should have recused himself from the case once he received it. Judges must recuse when their "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). "This conduct must be so extreme . . . that it displays a deep-seated favoritism or antagonism that would make fair judgment impossible." *United States v. Liggins*, 76 F.4th 500, 506 (6th Cir. 2023) (quotation omitted). Judges must also "proceed no further" when a party "files a timely and sufficient affidavit" showing that the judge "has a personal bias or prejudice either against him" or for his opponent. 28 U.S.C. § 144. The party seeking recusal bears the burden of showing that a reasonable person would conclude that the judge has a "personal bias" against him. *Consol. Rail Corp. v. Yashinsky*, 170 F.3d 591, 597 (6th Cir. 1999) (quotation omitted).

Murphy has not carried his burden. Chief Judge McDonough neither demonstrated bias nor possessed any apparent connections that rendered him unable to weigh Murphy's claims fairly.

Murphy persists that Chief Judge McDonough's "prior associations and experiences may raise a reasonable question about his impartiality." Appellants' Br. 13. More specifically, he argues, or at least argued below, that Chief Judge McDonough could not impartially adjudicate his claims because he had presided over Murphy's prior lawsuit and previously worked for the City of Chattanooga and a Chattanooga law firm. None of these facts demonstrates bias. Experience

with related cases does not constitute bias. *See Liteky v. United States*, 510 U.S. 540, 551 (1994). Murphy's claims relate to the Town of Farragut, not Chattanooga, and he has not shown that Chief Judge McDonough previously represented any of the parties or worked with any of the attorneys in this case. Murphy's sole explanation for why Chief Judge McDonough's previous employment would render him partial is that he worked on projects related to "economic development in Tennessee" and "low-income properties." R.34-2 at 2 (emphasis omitted). Those realities provide no undue connection to this case.

Murphy's argument, raised for the first time in his reply brief, that § 144 prohibited Chief Judge McDonough from proceeding any further once Murphy moved to disqualify him also fails. For one, "arguments made for the first time in a reply brief are forfeited." *Grand v. City of Univ. Heights*, --- F.4th ----, 2025 WL 3169604, at *7 (6th Cir. Nov. 13, 2025). Even if Murphy did not abandon this argument, it fails because § 144 requires recusal only after a "sufficient" affidavit. *See United States v. Story*, 716 F.2d 1088, 1090 (6th Cir. 1983) (quoting 28 U.S.C. § 144). The allegations in Murphy's filings failed to carry his "substantial burden" of proving personal bias. *See United States v. Denton*, 434 F.3d 1104, 1111 (8th Cir. 2006) (quotation omitted).

*Orders entered by the Clerk of the Sixth Circuit.* Murphy concludes by accusing the Clerk of the Sixth Circuit of improperly denying his motion to stay the briefing schedule. He insists that the clerk lacked authority to enter this order. We have already considered and rejected that argument—thrice over in fact. The clerk has authority to deny motions for an abeyance. *See* 6 Cir. R. 45(a)(2).

One final point. The Association asks us to require Murphy to pay its attorney's fees and costs incurred in this appeal and in the process of responding to his motions. We decline to exercise our discretion to impose sanctions at this stage. *See* 28 U.S.C. § 1927; Fed. R. App. P. 38.

We remind Murphy, however, that frivolous filings or "unreasonabl[e] and vexatious[]" conduct may merit sanctions. *See* 28 U.S.C. § 1927; *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991).

We affirm.